**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02826-WJM-KMT

D.R. HORTON, INC.-DENVER
d/b/a TRIMARK COMMUNITIES, a Delaware corporation, and
D.R. HORTON, INC., a Delaware corporation,

      Plaintiffs,

v.

THE TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut corporation,
TRAVELERS INDEMNITY COMPANY, a Connecticut corporation,
TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut corporation,
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, and
CHARTER OAK FIRE INSURANCE COMPANY, a Connecticut corporation,

      Defendants/Third-Party Plaintiffs,

v.

AAA WATERPROOFING, INC., *et al.*,

      Third-Party Defendants.

---

## ORDER ON TRAVELERS DEFENDANTS' MOTION TO DISMISS

---

      This matter is before the Court on the Motion to Dismiss (ECF No. 7) filed by

Defendants The Travelers Indemnity Company of America, Travelers Indemnity

Company, Travelers Indemnity Company of Connecticut, St. Paul Fire and Marine

Insurance Company, and Charter Oak Fire Insurance Company (collectively, the

"Travelers Defendants").[1]  In the Motion, the Travelers Defendants move under Federal

---

[1] The Court notes that there are eight other, more recently filed motions pending in this action.  (ECF No. 58, 60, 100, 107, 129, 159, 160, 171.)  Those motions relate to the Travelers Defendants' claims as Third-Party Plaintiffs against a host of Third-Party Defendants.  The Court defers ruling on those motions until a later date.  The Court refers to the five Defendants

Rule of Civil Procedure 12(b)(6) to dismiss the Fourth Claim for Relief in the Complaint (brought under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105), filed by Plaintiffs D.R. Horton, Inc.-Denver d/b/a Trimark Communities and D.R. Horton, Inc. (collectively, "Plaintiffs") (ECF No. 1-1).  Plaintiffs have filed a Response to the Motion (ECF No. 11), and the Travelers Defendants have filed a Reply (ECF No. 13).  The Motion is ripe for adjudication.  For the following reasons, the Travelers Defendants' Motion to Dismiss is DENIED.

## I. BACKGROUND

The following are allegations taken from Plaintiffs' Complaint, which the Court accepts as true at this stage of the proceedings.  *See infra*.

In 1999 and 2000, Plaintiffs undertook the development of a residential community known as the Summit at Rock Creek located in Boulder County, Colorado (the "Project").  (ECF No. 1-1, ¶ 11.)  Plaintiffs engaged a number of subcontractors to perform certain construction work on the Project.  (*Id.* ¶ 12.)  For purposes of Plaintiffs' Complaint and Travelers Defendants' Motion to Dismiss, the work of four of those subcontractors ("the Subcontractors") is at issue.  (*Id.* ¶¶ 12-16.)[2]  Under the agreements between Plaintiffs and the Subcontractors, the Subcontractors were required to carry commercial general liability insurance policies ("CGL policies") naming Plaintiffs as additional insureds.  (*Id.* ¶ 17.)  Each of the Subcontractors took out one or

in this action as the "Travelers Defendants" simply to distinguish them from the Third-Party Defendants.

[2] The Third-Party Defendants brought into this action by the Travelers Defendants are either other subcontractors who worked on the Project (apart from the four mentioned), or other subcontractors' insurers.

more CGL policies with one or more of the Travelers Defendants, naming Plaintiffs as additional insureds.  (*Id.* ¶¶ 18-22.)

In 2003, Plaintiffs were sued in state court based on alleged construction defects associated with the Project ("Construction Defects Litigation").  (*Id.* ¶ 23.)  On August 14, 2003, Plaintiffs tendered the defense of the Construction Defects Litigation to the Subcontractors and the Travelers Defendants.  (*Id.* ¶ 24.)  Each of the Travelers Defendants accepted Plaintiffs' tender of their defense.  (*Id.* ¶ 25.)  Plaintiffs hired a law firm to represent them in the Construction Defects Litigation, and the firm billed the Travelers Defendants for its fees and costs.  (*Id.* ¶¶ 26-27.)  However, between August 14, 2003 and October 30, 2008, none of the Travelers Defendants actually paid any portion of Plaintiffs' defense fees and costs in the Construction Defects Litigation.  (*Id.* ¶ 28.)

On October 31, 2008, the Travelers Defendants tendered checks to Plaintiffs in payment for Plaintiffs' defense fees and costs in the Construction Defects Litigation, with the checks totaling approximately $31,000.  (*Id.* ¶¶ 30-32.)  Plaintiffs returned the checks, claiming them to be inadequate under controlling law (Plaintiffs' Complaint indicates their belief that the $31,000 figure amounted to less than 4 percent of the Travelers Defendants' actual obligations).  (*Id.* ¶¶ 33-35.)  After a series of letters back and forth, the Travelers Defendants again submitted the checks to Plaintiffs on June 1, 2010.  (*Id.* ¶¶ 36-40.)

On October 20, 2010, Plaintiffs filed this action against the Travelers Defendants in Colorado District Court, Jefferson County, bringing four claims for relief:  (1) declaratory judgment; (2) breach of contract; (3) bad faith breach of insurance contract

3

under Colorado Revised Statute § 10-3-1116; and (4) deceptive trade practices in

violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

(ECF No. 1-1.)  On November 19, 2010, the Travelers Defendants removed the action

to this Court on the basis of diversity jurisdiction (28 U.S.C. § 1332).  (ECF No. 1.)

On December 3, 2010, the Travelers Defendants filed its Motion to Dismiss,

moving to dismiss one of the four claims in the Complaint:  the claim brought under the

Colorado Consumer Protection Act ("CCPA").  (ECF No. 7.)

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to

dismiss a claim in a complaint for "failure to state a claim upon which relief can be

granted."  In evaluating such a motion, a court must "assume the truth of the plaintiff's

well-pleaded factual allegations and view them in the light most favorable to the

plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.

2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint

contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is

a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the

liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty.*

*of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted).  "Thus, 'a

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting

*Twombly*, 550 U.S. at 556).

4

## III.  ANALYSIS

"The CCPA was enacted to regulate commercial activities and practices which, because of their [deceptive or unfair] nature, may prove injurious, offensive, or dangerous to the public."  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 146 (Colo. 2003) (quotation marks omitted).

To prove a private cause of action under the CCPA, a plaintiff must show:

(1) that the defendant engaged in an unfair or deceptive trade practice;

(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;

(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;

(4) that the plaintiff suffered injury in fact to a legally protected interest; and

(5) that the challenged practice caused the plaintiff's injury.

*Id.* at 146-47.

In their Motion to Dismiss, the Travelers Defendants argue that Plaintiffs' Complaint fails to plead sufficient facts as to the first and third elements of this test, namely, whether the Travelers Defendants engaged in a deceptive trade practice and, even if they did, whether the practice significantly impacts the public.  (ECF No. 7, at 6-11.)

### A.  Deceptive Trade Practices

The Travelers Defendants first argue that Plaintiffs' claim under the CCPA should be dismissed because Plaintiffs have failed to plead with specificity facts showing that the Travelers Defendants engaged in a deceptive trade practice under Colorado

Revised Statute § 6-1-105.  Given that a claim of deceptive trade practices is in the nature of fraudulent conduct, both parties agree that Plaintiffs must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) regarding their allegations that the Travelers Defendants engaged in deceptive trade practices.  (ECF No. 7, at 6; ECF No. 11, at 6.)  *See also Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985).

The Court holds that Plaintiffs have plead sufficient facts, with particularity, alleging that the Travelers Defendants engaged in deceptive trade practices.  In the Complaint, Plaintiffs allege that the Travelers Defendants accepted Plaintiffs' tender of the defense of the "Construction Defects Litigation," but then went more than five years without paying any of Plaintiffs' defense fees or costs.  (ECF No. 1-1, ¶¶ 23-28.) Plaintiffs further allege that, during that five-year period, the Travelers Defendants sent Plaintiffs letters reaffirming the Travelers Defendants' defense obligations.  (*Id.* ¶ 29.) The Complaint lists the specific dates of the letters, and by whom and to whom they were sent.  (*Id.*)[3]  Plaintiffs also allege that, in terms of the payments ultimately made, "[t]he Travelers Defendants knew, or should have known, . . . that the[ir] method of calculating payments . . . was directly contrary to controlling law [regarding how such payments should be calculated]."  (*Id.* ¶ 33, 59.c.)  The Complaint details the particulars of the payments made, including who made them and when they were made.  (*Id.* ¶¶

---

[3] *See HealthONE of Denver, Inc. v. UnitedHealth Group Inc.*, 805 F. Supp. 2d 1115, 1121 (D. Colo. 2011) ("The purpose of heightened pleadings under Rule 9(b) is to put [the defendant] on notice, so that it may prepare its case. I find Plaintiffs' Complaint does adequately set forth the time and place of [the defendant's] alleged unfair or deceptive trade practices so as to give notice to [the defendant].").

30-32.)  Providing details regarding individuals and dates, Plaintiffs further allege that

the Travelers Defendants later re-tendered checks to Plaintiffs in the same amount,

even after being informed by Plaintiffs via detailed letters for why such payments

allegedly violated controlling law.  (*Id.* ¶¶ 34-35, 40.)  These allegations fulfill Plaintiffs'

obligation to plead the existence of deceptive trade practices with particularity.

The Travelers Defendants' briefing focuses on the argument that Plaintiffs have

not pled facts showing a violation of the specific provisions of Colorado Revised Statute

¶ 6-1-105(1), which enumerates specific deceptive trade practices.  The pertinent

allegation in Plaintiffs' Complaint reads, "Defendants engaged in deceptive trade

practices prohibited under C.R.S. § 6-1-105, including, but not limited to, subsections

1(e), (g), and (n)(VII)."[4]  (ECF No. 1-1, ¶ 58.)  The Travelers Defendants argue that their

alleged conduct – paying less in defense fees and costs than Plaintiffs would prefer –

does not violate those three specific provisions.

The Colorado Supreme Court's decision in *Showpiece Homes Corp. v.*

*Assurance Company of America*, 38 P.3d 47 (Colo. 2001), makes clear that the

---

[4] Those subsections of the statute list as deceptive trade practices:

(e)  Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; . . .

(g)  Represent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; . . . [and]

(n)(VII)  Fail[ing] to make deliveries of the goods, property, or services within a reasonable time or to make a refund therefor; . . . .

Colo. Rev. Stat. § 6-1-105.

Travelers Defendants' this argument lacks merit.  There, the Court specifically

addressed the insurer's argument that the CCPA does not "specifically mention either

insurance companies or insurance transactions in the list of practices that are

considered to be unfair or deceptive practices." 38 P.3d at 53-54.  The Court rejected

the argument, stating, "In enacting the statute, the General Assembly could not have

possibly enumerated all, or even most, of the practices that the CCPA was intended to

cover." *Id.* at 54.  The Court concluded, "We find that the list [of enumerated unfair or

deceptive trade practices] in section 6-1-105 is not exhaustive and because deceptive

or unfair practices in the business of insurance could clearly injure the public they are

within the purview of the CCPA." *Id.*[5]

Another argument the Travelers Defendants' make in support of their Motion is

that "[t]he mere breach of an insurance policy, even in bad faith, does not implicate the

CCPA." (ECF No. 7, at 8.)[6]  This argument is plainly incorrect.  The Colorado Supreme

Court in *Showpiece Homes* held:  "[T]he CCPA applies to the acts or practices of

---

[5] Notably, the Complaint alleges that the Travelers Defendants "engaged in deceptive trade practices prohibited under *Colo. Rev. Stat. § 6-1-105* [generally]*, including, but not limited to*, subsections 1(e), (g), and (n)(VII)." (ECF No. 1-1, ¶ 58 (emphasis added).)  However, even if the Complaint had not alleged a violation of the statute generally and had not used the "including but not limited to" language, the Court would nevertheless still hold that the Complaint contains allegations sufficient to meet the three specific subsections listed.  The Court in *Showpiece Homes* also specifically held that "the sale of insurance can be classified as a sale of goods, services or property [under the CCPA]." 38 P.3d at 58.  This holding makes it clear that the sale of insurance can apply to provisions such as Colo. Rev. Stat. § 6-1-105(1)(e), (g), and (n)(VII).

[6] In support of the argument, the Travelers Defendants cite *North River Ins. Co. v. Bishop of Pueblo*, No. 06-cv-01971, 2008 WL 280842 (D. Colo. Jan. 31, 2008).  The *North River* court's actual language was:  "[T]he mere breach of an insurance policy, even in bad faith, does not **necessarily** implicate the CCPA." *Id.* at *3 (emphasis added) (using the "necessarily" language because the court proceeded to discuss the public impact element of a CCPA claim).

insurance companies. . . . [W]e hold that an insured may maintain an action against its insurer for bad faith handling of the insured's claim under the CCPA." 38 P.3d at 53, 58.

Plaintiffs' factual allegations that the Travelers Defendants engaged in deceptive trade practices under the CCPA are sufficiently plead with particularity.

**B.     Public Impact**

The Travelers Defendants also argue that Plaintiffs failed to plead sufficient facts showing that the Travelers Defendants' allegedly deceptive trade practices significantly impact the public. The CCPA "requires that a plaintiff . . . establish not only that the defendant engaged in a deceptive trade practice, but also that the defendant's challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Rhino Linings*, 62 P.3d at 149. The relevant factors to consider in evaluating whether a challenged practice significantly impacts the public are

> (1) the number of consumers directly affected by the challenged practice, (2) the relevant sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.

*Id.* at 149.

As an initial matter, the Court clarifies that it does not apply the heightened pleading standard of Rule 9(b) to this element of the CCPA claim. Defendant does not argue that a heightened pleading standard applies to this element of a CCPA claim, and the Court has not found any authority indicating that it does. The case repeatedly cited by courts (and cited by the parties in this action) as the authority for the proposition that a heightened pleading standard applies to CCPA claims is *Duran v. Clover Club Foods*

9

*Co.*, 616 F. Supp. 790 (D. Colo. 1985), in which the court held that "9(b)'s requirement of particularity applies to plaintiffs' allegations of deceptive trade practices under the [CCPA]." *Id.* at 793.  As this authority indicates, Plaintiffs must plead with particularity the *deceptive trade practice* that the Travelers Defendants allegedly engaged in, to put the Travelers Defendants on notice of their allegedly wrongful conduct, *HealthONE of Denver, Inc.*, 805 F. Supp. 2d at 1121, but need not plead with particularity how the challenged practice impacts the public.

Although a closer question, the Court holds that Plaintiffs' allegations are sufficient to meet the public impact element of a CCPA claim at this preliminary pleading stage.  Important in this regard is the fact that all five of the Travelers Defendants are alleged to have committed the same bad faith conduct by failing to provide a defense for five years, and then making payments for defense fees and costs that were calculated using methods directly contrary to controlling law.  (ECF No. 1-1, ¶¶ 24-40.)  These actions affected four insureds.  On this basis, Plaintiffs allege,

> 61.  Upon information and belief, the Travelers Defendants have engaged in the conduct described herein in transactions with a number of their insureds, including, without limitation, several other claims made by [Plaintiffs] or its wholly owned subsidiaries as additional insured(s) under other policies issued by the Travelers Defendants.
>
> 62.  The Travelers Defendants' deceptive trade practices significantly impact the public as actual and potential consumers of the Travelers Defendants' goods and services.

(*Id.* ¶¶ 61-62.)  Certainly, a Complaint containing paragraph 62 alone would constitute an unacceptable legal conclusion unsupported by fact.  However, paragraph 62 is supported by paragraph 61 (which suggests these may not be the only policies under which the Travelers Defendants committed such acts) and the allegations described

10

above contained within paragraphs 24 through 40.  Given these factual assertions,

which for purposes of the instant Motion the Court must accept as true, *Ridge at Red

Hawk,* 493 F.3d at 1177, the Court holds that Plaintiffs' allegations are sufficient to state

a claim of public impact.[7,8]

## IV.  CONCLUSION

In accordance with the foregoing, the Court ORDERS that the Travelers

Defendants' Motion to Dismiss (ECF No. 7) is DENIED.

Dated this 16th day of February, 2012.

BY THE COURT:

_____

William J. Martínez
United States District Judge

---

[7] The Court notes again that the Colorado Supreme Court has held that "an insured may maintain an action against its insurer for bad faith handling of the insured's claim under the CCPA." *Showpiece Homes*, 38 P.3d at 53, 58.  It is difficult to imagine how an insured could ever maintain a CCPA action against an insurer for bad faith handling of the insured's claim if the plaintiff needed to show *at the pleading stage* a widespread pattern or practice of the insurer in handling the claims of other insureds in the same way.  *See Riggs v. City of Albuquerque*, 916 F.2d 582, 586 (10th Cir. 1990) (discussing "[t]he importance of permitting discovery when crucial information is in the exclusive control of the defendant").

[8] This holding should not be interpreted as a ruling on the merits of Plaintiffs' claim of public impact.  The Court only rules herein that Plaintiffs are entitled to proceed past the pleading stage, and should be given an opportunity in discovery to attempt to uncover facts showing public impact.