**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02826-WJM-KMT

D.R. HORTON, INC.-DENVER d/b/a TRIMARK COMMUNITIES, a Delaware
corporation, and
D.R. HORTON, INC., a Delaware corporation,

      Plaintiffs,

v.

THE TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut corporation,
TRAVELERS INDEMNITY COMPANY, a Connecticut corporation,
TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut corporation,
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, and
CHARTER OAK FIRE INSURANCE COMPANY, a Connecticut corporation,

      Defendants/Third-Party Plaintiffs,

v.

AAA WATERPROOFING, INC., a Colorado Corporation,
ADMIRAL INSURANCE COMPANY, a Delaware Corporation,
AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, a New
York Corporation,
ARK CONSTRUCTION SERVICES, INC., a dissolved Colorado Corporation,
C & C SEAMLESS GUTTER COMPANY, was a trade name of Williams Consolidated I
Ltd., a Texas corporation,
CONCRETE MANAGEMENT CORPORATION, a Colorado Corporation,
D.A.S.H. CONCRETE, INC., a Colorado Corporation,
DOVE CREEK ENTERPRISES, INC., a Colorado Corporation,
FOSTER FRAMES, INC., a Colorado Corporation,
J & K PIPELINE, INC., a Colorado Corporation,
JORGE ROMERO, d/b/a SPECIALIST PAINT,
LEVEL MASONRY, INC., a dissolved Colorado Corporation,
MID-CENTURY INSURANCE, a California Corporation,
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a
Pennsylvania Corporation,
PROTO CONSTRUCTION AND PAVING, INC., a Colorado Corporation,
R.G. INSULATION CO., INC., is a trade name of G.H. & W, Incorporated, a Missouri
Corporation,
TIG INSURANCE, a California Corporation,
THE COOLER COMPANY, a Colorado Corporation,

TRI-STAR DRYWALL, INC., a Colorado Corporation,
WB LANDSCAPING, INC., a dissolved Colorado Corporation, and
ZURICH SPECIALTIES LONDON, LTD., a non-incorporated re-insurer,

      Third-Party Defendants.

---

**ORDER ON CERTAIN THIRD-PARTY DEFENDANTS'
MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT,
AND THIRD-PARTY PLAINTIFFS' MOTION TO STRIKE**

---

This matter is before the Court on:

(1)    Motions to Dismiss filed by Third-Party Defendants TIG Insurance (ECF No. 58), Foster Frames, Inc. (ECF No. 60), Level Masonry, Inc. (ECF No. 129), Jorge Romero d/b/a Specialist Paint (ECF No. 159), and R.G. Insulation Co., Inc. (ECF No. 171).  These Motions seek dismissal of the claims brought against these Third-Party Defendants by Defendants/Third-Party Plaintiffs The Travelers Indemnity Company of America, Travelers Indemnity Company, Travelers Indemnity Company of Connecticut, St. Paul Fire and Marine Insurance Company, and Charter Oak Fire Insurance Company (collectively, the "Travelers Defendants");

(2)    A motion to strike filed by the Travelers Defendants (ECF No. 160), which asks the Court to strike the Motion to Dismiss filed by Level Masonry, Inc.; and

(3)    Motions for Summary Judgment filed by Third-Party Defendants AAA Waterproofing, Inc. (ECF Nos. 100) and Mid-Century Insurance (ECF No. 107). These Motions seek summary judgment on the claims brought against these

Third-Party Defendants by the Travelers Defendants.[1]

These motions are ripe for adjudication.  (*See also* ECF Nos. 93, 94, 98, 114, 121, 126, 140, 157, 158, 161, 165, 166, 185, 186, 187, 188, 200.)

## I.  BACKGROUND[2]

In 1999 or 2000, Plaintiff D.R. Horton, Inc.-Denver d/b/a Trimark Communities[3] was engaged as the general contractor for the construction of a residential community known as the Summit at Rock Creek located in Boulder County, Colorado (the "Project").  D.R. Horton engaged a number of subcontractors to perform certain construction work on the Project.  The subcontracts between D.R. Horton and the subcontractors required each of the subcontractors to carry a commercial general liability insurance policy ("CGL policy") naming D.R. Horton as an additional insured. (ECF No. 30, ¶ 34.)  The Travelers Defendants are five insurers who collectively insured four of the subcontractors under such CGL policies.  (*Id.* ¶¶ 3-7.)  The Third-Party Defendants brought into this action by the Travelers Defendants are either

---

[1] The only other currently pending motions are Plaintiffs' Motion to Compel (ECF No. 221), which has been referred to U.S. Magistrate Judge Kathleen M. Tafoya for decision (ECF Nos. 222), and Plaintiffs' Motion for Leave to File First Amended Complaint (ECF No. 226), which has not yet been fully briefed (ECF No. 227).

[2] This Background section mostly contains only the very basic background facts and procedural history of this action and the underlying construction defects litigation.  The parties' pleadings and briefing on the pending Motions make clear that most of these facts are undisputed and noncontroversial.  In certain cases, the Court has described allegations from the Travelers Defendants' Third-Party Complaint (with citations to ECF No. 30), which are accepted as true for purposes of the pending Motions to Dismiss.

[3] The Plaintiffs in this action are D.R. Horton, Inc.-Denver d/b/a Trimark Communities and D.R. Horton, Inc.  Presumably, the latter is the parent company of the former, or at the very least they are affiliated in some way.  For purposes of the pending motions, the distinction between the two entities is unimportant, and so for purposes of simplicity the Court will refer to either entity or both entities simply as "D.R. Horton."

subcontractors who worked on the Project, insurers of subcontractors, or D.R. Horton's own insurers.  (*Id.* ¶¶ 8-28.)

On February 3, 2003, the homeowners association for the Summit at Rock Creek (the "HOA") brought suit against D.R. Horton in state court based on alleged construction defects associated with the Project ("Construction Defects Litigation").  (*Id.* ¶ 29.)  D.R. Horton tendered the defense of the Construction Defects Litigation to all of the subcontractors that had worked on the Project.  (*Id.* ¶ 32.)  On February 12, 2004, D.R. Horton filed a Third-Party Complaint in that litigation against the subcontractors, alleging that (1) the construction defects were caused by the subcontractors, (2) some of the subcontractors failed to obtain CGL policies or failed to name D.R. Horton as an additional insured under their CGL policies; and (3) the subcontractors are liable for the defense attorney's fees and costs incurred by D.R. Horton in defending the Construction Defects Litigation.  (*Id.* ¶¶ 37-39.)  D.R. Horton ultimately settled the Construction Defects Litigation with the HOA for $39.5 million.  (*Id.* ¶ 40.)  D.R. Horton incurred approximately $1.24 million in fees and costs defending the Construction Defects Litigation.  (*Id.* ¶ 42.)

D.R. Horton continued to pursue its third party claims against the subcontractors.  (*Id.* ¶ 41.)  The success *vel non* of many of those claims is not entirely clear, although the record does indicate that D.R. Horton reached settlements with at least some of the subcontractors.

On October 20, 2010, D.R. Horton filed this action against the Travelers Defendants in Colorado District Court, Jefferson County, bringing four claims for relief: (1) declaratory judgment; (2) breach of contract; (3) bad faith breach of insurance

4

contract; and (4) deceptive trade practices.  (ECF No. 1-1.)  In short, D.R. Horton's

Complaint alleges that, although the Travelers Defendants purported to accept D.R.

Horton's tender of the defense of the Construction Defects Litigation, the Travelers

Defendants delayed payment of D.R. Horton's defense fees and costs, and ultimately

made inadequately low payments to D.R. Horton for those fees and costs.  (*Id.*)  On

November 19, 2010, the Travelers Defendants removed the action to this Court on the

basis of diversity jurisdiction (28 U.S.C. § 1332).  (ECF No. 1.)

On April 4, 2011, the Travelers Defendants filed a Third-Party Complaint against

certain subcontractors who worked on the Project, insurers of certain subcontractors,

and D.R. Horton's own insurers.  (ECF No. 30.)  In short, the Travelers Defendants

allege that, in this action, D.R. Horton is attempting to recover from the Travelers

Defendants more than the Travelers Defendants' equitable share of D.R. Horton's

defense fees and costs.  (*Id.* ¶ 70.)  The Travelers Defendants allege that: (1) the Third-

Party Defendants are liable for their own equitable share of D.R. Horton's defense fees

and costs, and (2) the Third-Party Defendants should be required to compensate the

Travelers Defendants for any liability the Travelers Defendants incur in excess of their

own equitable share of D.R. Horton's defense fees and costs.  (*Id.* ¶¶ 71-86.)  The

Travelers Defendants bring claims against the Third-Party Defendants for equitable

subrogation, contractual subrogation, equitable contribution, and declaratory judgment.

(*Id.* ¶¶ 71-89.)

The pending Motions to Dismiss are brought under Federal Rule of Civil

Procedure 12(b)(6), while the Motions for Summary Judgment are, of course, brought

under Federal Rule of Civil Procedure 56.

## II.  LEGAL STANDARDS

### A.      Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to
dismiss a claim in a complaint for "failure to state a claim upon which relief can be
granted."  In evaluating such a motion, a court must "assume the truth of the plaintiff's
well-pleaded factual allegations and view them in the light most favorable to the
plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.
2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint
contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is
a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the
liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty.
of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted).  "Thus, 'a
well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of
those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting
*Twombly*, 550 U.S. at 556).

### B.      Motions for Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the
movant shows that there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A fact is "material" if under the
relevant substantive law it is essential to proper disposition of the claim.  *Wright v.*

6

*Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

When, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotation marks omitted).  If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quotation marks omitted).

### III.  ANALYSIS

**A.    Foster Frames' Motion to Dismiss**

The Court begins its analysis by evaluating the Motion to Dismiss filed by Foster Frames, Inc. ("Foster Frames").  (ECF No. 60.)  In the Motion, Foster Frames argues that the Travelers Defendants' claims against it are time-barred.  Specifically, Foster Frames argues that (1) as subrogees of D.R. Horton in the underlying action, the Travelers Defendants' claims accrued at the time they accrued to D.R. Horton; (2) D.R. Horton's claims necessarily accrued on or before February 12, 2004, the date on which

7

D.R. Horton filed its Third-Party Complaint against Foster Frames in the Construction Defects Litigation; and (3) the Travelers Defendants' claims against Foster Frames in this action, brought in the Third-Party Complaint filed on April 4, 2011, are barred by the applicable statutes of limitations.  Notably, Foster Frames' arguments are based on the theory that the Travelers Defendants are subrogees of D.R. Horton, but Foster Frames moves to dismiss not only the Travelers Defendants' two subrogation claims, but also their equitable contribution claim and declaratory judgment claim.

In Response, the Travelers Defendants argue that (1) their Third-Party Complaint does not indicate that their subrogation claims accrued on or before February 12, 2004, and (2) nevertheless, the Travelers Defendants do not stand in the shoes of D.R. Horton in terms of their equitable contribution and declaratory judgment claims, and their Third-Party Complaint is silent as to when their equitable contribution and declaratory judgment claims accrued.  (ECF No. 94.)

In Reply, Foster Frames reiterates its position as to the subrogation claims, and for the first time separately briefs the issue of why the equitable contribution and declaratory judgment claims should be dismissed.  (ECF No. 114.)

### 1.	The Travelers Defendants' Subrogation Claims Against Foster Frames

"Subrogation is defined as the substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant. . . . [It] is a traditionally equitable remedy, which, by contract, can also occur at law."  *Am. Family Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 323 (Colo. 2009) (quotation marks omitted).  In the insurance context, subrogation allows "an insurer

8

[that] has paid its insured for a loss caused by a third party [to recover] from the third

party." *United Fire Grp. v. Powers Electric, Inc.*, 240 P.3d 569, 573 (Colo. App. 2010).

Subrogation claims are derivative, meaning that a subrogee insurer's rights extend only

as far as the rights of its insured. *See id.* ("Stepping into the shoes of its insured gives

the subrogated insurer no greater rights than the insured, for one cannot acquire by

subrogation what another, whose rights he or she claims, did not have.") (quotation

marks omitted).

The majority view, and the rule in Colorado, is that "statutes of limitation begin to

run against a subrogee insurer at the time a claim accrues to its insured." *Union Ins.*

*Co. v. RCA Corp.*, 724 P.2d 80, 82 (Colo. App. 1986), *overruled on other grounds by*

*Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198, 207 n.17 (Colo. 1992); *see also Am.*

*Comp. Ins. Co. v. MTD Prods.*, No. 09-cv-02934, 2012 WL 503523, at *7 (D. Colo. Feb.

12, 2012) ("Courts have rejected arguments that an insurer's subrogation claim does

not arise for statute of limitations purposes until the insurer pays the insured, holding in

that context that the claim arises when the insured's claim arises."); 2 Law & Prac. of

Ins. Coverage Litig. § 15:12 ("[A] defendant in a subrogation claim can assert all

defenses against the insurer that it would have had against the insured, including a

statute of limitations defense.  If the statute of limitations has run against the insured at

the time that the insurer brings its subrogation claim, the case will be dismissed as

stale.").

Further, the timeliness of a subrogation claim depends on the statute of

limitations for the underlying alleged wrong suffered by the insured. *See Ins. Co. of N.*

*Am. v. Aspen Alps*, 915 F. Supp. 1122, 1125 (D. Colo. 1996) (in subrogation action

9

brought by insurer, court applied statute of limitations for breach of contract claim, stating, "it is the nature of the right sued upon in Colorado and not necessarily the particular form of action or the precise character of the relief requested that ordinarily determines the applicability of a particular statute of limitations to the case at issue"); 3 Law & Practice of Ins. Coverage Litig. § 42:20 ("[S]ubrogation actions must be brought within the statute of limitations available to the subrogor.").  Here, the claims the Travelers Defendants pursue as subrogees of D.R. Horton seek recovery of defense fees and costs allegedly owed to D.R. Horton under D.R. Horton's contracts with the subcontractors and under the CGL policies taken out by certain subcontractors.  The claims sound in contract.  Thus, the three year statute of limitations in Colorado Revised Statute section 13-80-101(1)(a) applies to the Travelers Defendants' subrogation claims.

The question turns to when the Travelers Defendants' subrogation claims against Foster Frames accrued for purposes of the running of the three-year statute of limitations.  The Court agrees with Foster Frames that these claims necessarily accrued on the date that D.R. Horton – the Travelers Defendants' subrogor – brought its Third-Party Complaint against Foster Frames in the Construction Defects Litigation seeking, *inter alia*, recovery of defense fees and costs incurred in defending that action, February 12, 2004.  (ECF No. 30, ¶¶ 36-39.)  Thus, the Travelers Defendants' subrogation claims necessarily accrued on or before February 12, 2004, and thus were barred as of February 13, 2007.  The Travelers Defendants' subrogation claims, brought in its Third-Party Complaint filed in this action on April 4, 2011, are therefore time-barred.

The Travelers Defendants' argument for why their subrogation claims did not

accrue on or before February 12, 2004 is that "[a] breach of contract claim does not accrue until the time that one learns of a breach <u>and</u> sustains damages as a result." (ECF No. 94, at 7 (emphasis in original) (citing *Farmers Ins. Exch. v. Am. Mfrs. Mut. Ins. Co.*, 897 P.2d 880, 882 (Colo. App. 1995).)  Thus, they argue, although D.R. Horton allegedly began *incurring* defense fees and costs in the Construction Defects Litigation at the inception of the litigation (*i.e.*, becoming obligated to pay the retained law firm for its fees and costs), there is no indication in the Complaint that D.R. Horton actually *paid* defense fees and costs that early, and therefore did not necessarily sustain damages causing the claims to accrue.  (ECF No. 94, at 7-8.)

That argument, although creative, is unavailing.  The rule in Colorado is that "[a] cause of action for breach of any express or implied contract, agreement, warranty, or trust shall be considered to accrue on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence."  Colo. Rev. Stat. § 13-80-108(6).  Although of course an essential element of a breach of contract claim is injury/damages, this governing statutory provision regarding the timing of accrual of causes of action for purposes of statutes of limitations say nothing about a damages requirement.

*Farmers Insurance Exchange*, the case relied upon by the Travelers Defendants, is distinguishable and does not support the broad statement of law advanced by the Travelers Defendants.  In *Farmers Insurance Exchange*, the question was when a cause of action accrues for a liability insurer to bring suit against another liability insurer that failed to provide a defense.  The court stated that "as soon as [the plaintiff insurer] learned of the breach and expended monies to defend [its insured], its claim under the

11

insurance contract accrued." *Id.* at 882.  That result, in the case of one liability insurer

suing another for breach of the duty to defend a common insured, is not surprising.

However, here the question is when a claim accrues for an *insured* to bring suit against

*its insurer* for breach of the duty to defend.  In a more recent Colorado Court of Appeals

decision, the court made clear that "[a]n action for breach of a duty to defend in an

insurance contract arises when a third party makes a claim against the insured alleging

facts that might fall within the policy's coverage." *Daugherty v. Allstate Ins. Co.*, 55 P.3d

224, 226 (Colo. App. 2002), *overruled on other grounds by Brodeur v. Am. Home Assur.*

*Co.*, 169 P.3d 139, 148 n.10 (Colo. 2007).  In addition, there is no indication that D.R.

Horton's claims in the Construction Defects Litigation were not ripe at the time it filed its

Third-Party Complaint in that action on February 12, 2004.[4]

The Court notes that the Travelers Defendants could have protected their

subrogation rights by promptly paying D.R. Horton's defense fees and costs in the

Construction Defects Litigation, and joining that action in order to assert its subrogation

claims there.  At least according to D.R. Horton's Complaint in this action, the Travelers

Defendants chose not to do so.  The Travelers Defendants cannot now complain that its

subrogation claims against Foster Frames are time-barred.  *David Jeffrey, Ltd. v.*

*Jewelers Mut. Ins. Co.*, No. 86-6222, 1987 WL 16664, at *3 (E.D. Pa. Sept. 1, 1987) (in

---

[4] Further, even if the Travelers Defendants' statement of law were correct, the Travelers Defendants' own Third-Party Complaint alleges that D.R. Horton retained the law firm of Higgins, Hopkins, McLain & Roswell, LLC ("HHMR") after being sued by the HOA in 2003. (ECF no. 30, ¶ 30.)  Even construing that allegation in the light most favorable to the Travelers Defendants, it would be an unreasonable leap to assume for purposes of Foster Frames' Motion that D.R. Horton did not pay any defense fees and costs to HHMR for over five years, which would be necessary to bring the Travelers Defendants' claims within the limitations period.

holding that insurer's subrogation claim accrued at the time the insured's underlying claim accrued, the court stated, "By resisting the claim [of its insured], for whatever reason, [the insurer] ran the risk that its delay would result in a lost cause of action").

The Travelers Defendants' equitable subrogation claim and contractual subrogation claim against Foster Frames are dismissed with prejudice.

### 2.     The Travelers Defendants' Equitable Contribution and Declaratory Judgment Claims Against Foster Frames

The Travelers Defendants are correct, however, that their equitable contribution claim and declaratory judgment claim against Foster Frames are not subject to dismissal.[5]   Although Foster Frames refers to these claims as subrogation claims, they are not.  *See* Colo. Rev. Stat. § 13-50.5-102; *Republic Ins. Co. v. U.S. Fire Ins. Co.*, 444 P.2d 868, 870 (Colo. 1968) ("Contribution is a principle sanctioned in equity, and arises between co-insurors only, [p]ermitting one who has paid the whole loss to obtain reimbursement from other insurers who are also liable therefor."); *Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.*, 833 P.2d 741, 747-48 (Colo. 1992) (stating that insurer that voluntarily pays more than its share of a loss may bring a contribution claim against a second insurer, independent of any subrogation claim the insurer might have); *Adolph Coors Co. v. Am. Ins. Co.*, No. Civ.A. 92 N. 61, 1993 WL 13029757, at *6 (D. Colo. Sept. 9, 1993) (identifying an insurer's subrogation claim as analytically distinct from the

---

[5] Because Foster Frames did not provide specific argument in its Motion for why the Travelers Defendants' contribution and declaratory judgment claims are time-barred, such an argument has arguably been waived. *Echo Acceptance Corp. v. Household Retail Servs.,* 267 F.3d 1068, 1077 n. 5 (10th Cir. 2001) (courts have "consistently held that arguments inadequately briefed in the opening brief are waived[.]") (internal quotation marks omitted). The Court looks unfavorably on the fact that Foster Frames first briefed this issue in detail in its Reply.

insurer's contribution claim).

The Travelers Defendants' analytically distinct claims for contribution and declaratory judgment are subject to a different analysis in terms of the applicable statutes of limitations and when those claims accrued.  *See* 3 Law & Practice of Ins. Coverage Litig. § 42:20 ("Actions for contribution and indemnity may be filed within their own limitation period usually based on resolution of the underlying claim even if the statute of limitations on the underlying claim has expired.").  A two-year statute of limitations applies to declaratory judgment actions.  *See Harrison v. Pinnacol Assurance*, 107 P. 3d 969, 972 (Colo. App. 2004).  It appears that a one-year statute of limitations applies to the Travelers Defendants' equitable contribution claim.  *See* Colo. Rev. Stat. § 13-50.5-104(4).  *But see Royal Indem. Co. v. Am. Family Mut. Ins. Co.*, No. 02-cv-2216, 2008 WL 4378737, at *7 (D. Colo. Sept. 18, 2008) (applying three-year "catch all" statute of limitations to equitable contribution claim).

The question turns to when the Travelers Defendants' contribution claim and declaratory judgment claim accrued for purposes of running the applicable statutes of limitations.  There is some authority to suggest that the Travelers Defendants' contribution claim has not yet accrued (because a judgment or settlement with D.R. Horton has not yet taken place), but that the Travelers Defendants still may maintain their contribution claim in this action under Federal Rule of Civil Procedure 14 for purposes of judicial efficiency.  *See Coniaris v. Vail Associates, Inc.*, 586 P.2d 224, 225 (1978) ("[No] cause of action accrues to a joint tortfeasor until there has been a judgment against him or a settlement of the claim.  A claim for contribution is an action separate and distinct from the underlying tort.  The rights and obligations of the

14

tortfeasors flow, not from the tort, but from the judgment or settlement itself."); *Patten v. Knutzen*, 646 F. Supp. 427 (D. Colo. 1986) (allowing contribution claim under Fed. R. Civ. P. 14 even though judgment or settlement – which would cause the contribution claim to accrue – had not yet occurred).

There is also authority suggesting that the claim might accrue when the Travelers Defendants make a payment to D.R. Horton, and D.R. Horton's Complaint indicates that the Travelers Defendants last tendered a proposed payment to D.R. Horton on June 1, 2010 (ECF No. 1-1, ¶¶ 40-41), which would make the Travelers Defendants' April 4, 2011 Third-Party Complaint timely. *See* Colo. Rev. Stat. § 13-50.5-104(4)(a) (requiring the action for contribution to be commenced within one year after payment). Regardless, it is not sufficiently clear from the Travelers Defendants' Third-Party Complaint that the Travelers Defendants' contribution claim, and their declaratory judgment claim based on the contribution theory, are time-barred.

Foster Frames' Motion to Dismiss as to the Travelers Defendants' equitable contribution claim and declaratory judgment is denied.

### 3.   The Effect of the Court's Ruling on the Travelers Defendants' Subrogation Claims Against Other Subcontractors

The Court has ruled that the Travelers Defendants' equitable subrogation and contractual subrogation claims against Foster Frames are time-barred. For good cause, including the interests of judicial efficiency, the Court also believes it appropriate, on its own motion, to dismiss the Travelers Defendants' subrogation claims against all other *subcontractors* named as Third-Party Defendants in this action. These subcontractors were all named as third-party defendants by D.R. Horton in the Construction Defects

Litigation.  Just like the Travelers Defendants' subrogation claims against Foster

Frames, the Travelers Defendants' claims against the other subcontractors clearly

accrued on or before February 12, 2004, the date on which D.R. Horton brought its

claims against the subcontractors in the Construction Defects Litigation.  Thus, just as

the Travelers Defendants' subrogation claims against Foster Frames are time-barred,

the Travelers Defendants' subrogation claims against the other subcontractors are also

time-barred.  *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (stating that a

court may dismiss a claim *sua sponte* based on an affirmative defense – such as statute

of limitations – where "the defense is obviously from the face of the complaint and no

further factual record is required to be developed") (quotation marks omitted); 35B

C.J.S. Fed. Civ. Proc. § 821 ("A federal district court may exercise the power to dismiss

an action on its own motion . . . [where a] complaint [is] barred by expiration of a statute

of limitations . . . .").

Thus, the Court, on its own motion, hereby dismisses with prejudice the

Travelers Defendants' equitable subrogation claim and contractual subrogation claim

against AAA Waterproofing, Inc., Ark Construction Services, Inc., C & C Seamless

Gutter Company, Concrete Management Corporation, D.A.S.H. Concrete, Inc., Dove

Creek Enterprises, Inc., J & K Pipeline, Inc., Jorge Romero d/b/a Specialist Paint, Level

Masonry, Inc., Proto Construction and Paving, Inc., R.G. Insulation, Inc., The Cooler

Company, Tri-Star Drywall, Inc., and WB Landscaping, Inc.  The Travelers Defendants'

equitable contribution claim and declaratory judgment claim against these

subcontractors survive (just as they do as to Foster Frames, discussed *supra*).

However, as to the ***insurers*** named as Third-Party Defendants in this action by

16

the Travelers Defendants, the pleadings and the record do not indicate when the

Travelers Defendants' subrogation claims against those insurers accrued for purposes

of the running of the statute of limitations (the insurers were not named by D.R. Horton

as third-party defendants in the Construction Defects Litigation).   Therefore, the Court

will not dismiss the Travelers Defendants' subrogation claims (or the contribution or

declaratory judgment claims) against the third-party defendant ***insurers*** in this action:

Admiral Insurance Company, American International Specialty Lines Insurance

Company, Mid-Century Insurance, National Union Fire Insurance Company of

Pittsburgh, PA, TIG Insurance, and Zurich Specialties London, Ltd.).

**B.     TIG Insurance's Motion to Dismiss**

On May 26, 2011, Third-Party Defendant TIG Insurance ("TIG") filed a Motion to

Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 58.)  In the

Motion, TIG argues that the Travelers Defendants' Third-Party Complaint contains

mostly conclusory allegations, and that the few factual allegations applicable to TIG

Insurance show that the Travelers Defendants have not stated a claim against TIG.

It is true that one of the Travelers Defendants' few factual allegations against TIG

is that "TIG agreed to participate in the defense of D.R. Horton . . . ."  (ECF No. 30, ¶

47.)  However, construing this allegation in a light most favorable to the Travelers

Defendants, the allegation in no way indicates that TIG paid its equitable share of D.R.

Horton's defense fees and costs.  Indeed, the Travelers Defendants themselves are

alleged to have agreed to participate in the defense of D.R. Horton in the Construction

Defects Litigation, but then allegedly delayed payment of defense fees and costs and,

17

ultimately, allegedly paid an inadequately low amount of defense fees and costs.  (*See* ECF. No. 1-1.)  Construing the Travelers Defendants' allegations against TIG in a light most favorable to the Travelers Defendants, TIG is also alleged to have paid an inequitable share of D.R. Horton's defense fees and costs.  (*See, e.g.*, ECF No. 30, ¶ 75 ("[T]he Third-Party Defendants have breached their duties to defend D.R. Horton . . . or failed to contribute their equitable share of the defense fees and costs.")

Particularly considering the long and storied history of these disputes (the filing of the Construction Defects Litigation, the Third-Party Complaint in that action, the filing of this action, and now the filing of the Third-Party Complaint in this action), the Travelers Defendants' Third-Party Complaint has sufficiently put TIG on notice of the nature of the Travelers Defendants' claims and the grounds upon which they rest.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).  Accordingly, Third-Party Defendant TIG Insurance's Motion to Dismiss is denied.

**C.    Level Masonry's Motion to Dismiss and the Travelers Defendants' Motion to Strike**

On August 8, 2011, Third-Party Defendant Level Masonry, Inc. ("Level Masonry") filed a Motion to Dismiss the Travelers Defendants' Third-Party Complaint.  (ECF No. 129.)  In the Motion, Level Masonry argues that the Travelers Defendants' claims against Level Masonry are barred by Level Masonry's settlement with D.R. Horton in the Construction Defects Litigation.  Level Masonry attaches to its Motion the purported settlement agreement between Level Masonry and D.R. Horton.  (*Id.* Ex. A.)

On September 1, 2011, the Travelers Defendants filed an "Objection to Level Masonry, Inc.'s Motion to Dismiss (Doc. 129), Requesting that the Court Strike Level

Masonry's Motion to Dismiss and Order that Level Masonry File an Appropriate Motion Pursuant to Fed.R.Civ.P. 56." (ECF No. 160.)  In the filing, the Travelers Defendants argue that (1) the Court should exclude consideration of the settlement agreement because evidence is not appropriately considered on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), (2) the Court should decline to convert Level Masonry's Motion to Dismiss into a motion for summary judgment, and (3) when the settlement agreement is excluded from consideration, there is no legal basis for Level Masonry's Motion to Dismiss and the Motion should be stricken.  Because the Travelers Defendants specifically request that the Court "strike" Level Masonry's Motion to Dismiss, the Court construes the Travelers Defendants' "Objection" as a motion to strike under Federal Rule of Civil Procedure 12(f).  Level Masonry did not respond to the Travelers Defendants' filing.

The Court agrees with the Travelers Defendants' reasoning.  It would not be appropriate at the pleading stage to consider the settlement agreement at issue, which is not incorporated by reference into the Travelers Defendants' Third-Party Complaint, is not referred to in the Third-Party Complaint, and is not a proper subject of judicial notice. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  The Court excludes consideration of the settlement agreement, and declines to convert Level Masonry's Motion to Dismiss into a motion for summary judgment (which Level Masonry has not even requested).  With the settlement agreement excluded, there is no legal basis for Level Masonry's Motion to Dismiss.  The Court only parts ways with the Travelers Defendants' request in that the Court believes it appropriate to deny, rather than strike, Level Masonry's Motion to Dismiss.  Therefore, the Court will deny Level

Masonry's Motion to Dismiss and deny as moot the Travelers Defendants' motion to strike.

**D.    Jorge Romero d/b/a Specialist Paint's Motion to Dismiss and R.G. Insulation's Motion to Dismiss**

Third-Party Defendants Jorge Romero d/b/a Specialist Paint ("Specialist Paint") and R.G. Insulation Co., Inc. ("R.G.") have also filed Motions to Dismiss (ECF No. 159, 171).[6]  In those Motions, Specialist Paint and R.G. make two arguments.  First, Specialist Paint and R.G. argue that the Travelers Defendants' claims against them are time-barred.  These arguments are essentially the same as those made by Foster Frames' Motion, discussed *supra*.  The Court need not address these arguments because the Court has already ruled on its own motion that the Travelers Defendants' equitable subrogation and contractual subrogation claims against Specialist Paint and R.G. are subject to dismissal (but not the Travelers Defendant's equitable contribution and declaratory judgment claims against Specialist Paint and R.G.).

The other argument made by Specialist Paint and R.G. in their Motions is that (1) D.R. Horton in this action only seeks from the Travelers Defendants the Travelers Defendants' equitable share of D.R. Horton's defense fees and costs, (2) thus the Travelers Defendants will not become liable in this action for anything more than their equitable share of D.R. Horton's defense fees and costs, and (3) so the Travelers Defendants cannot maintain claims against Specialist Paint and R.G. based on the theory that the Travelers Defendants might become obligated to pay more than their own equitable share of defense fees and costs.

---

[6] R.G. also joins in Specialist Paint's Motion to Dismiss.  (*See* ECF No. 171, at 1.)

The Court defers ruling on this argument, and therefore defers ruling on the

Motions to Dismiss filed by Specialist Paint and R.G.  D.R. Horton has recently filed a

Motion for Leave to File First Amended Complaint.  (ECF No. 226.)  In this Motion, D.R.

Horton seeks to amend its Complaint to make clear that in this action it seeks to impose

joint and several liability on the Travelers Defendants, and therefore seeks to recover

from each of the Travelers Defendants the full amount of D.R. Horton's defense fees

and costs.[7]  The Court has not determined how it will rule on D.R. Horton's Motion for

Leave to File First Amended Complaint.  However, should the Court determine that it is

appropriate to allow D.R. Horton to amend its Complaint, such amendment would seem

to undercut the strength, if any, of this argument made by Specialist Paint and R.G.[8]

The Court believes it appropriate to first rule on D.R. Horton's Motion for Leave to File

First Amended Complaint (briefing on that Motion will be complete as of March 22,

2012).  The Court will rule promptly on that Motion after March 22, 2012.  Following that

ruling, the Court will also promptly rule on the Motions to Dismiss filed by Specialist

Paint and R.G.

**E.      AAA Waterproofing's Motion for Summary Judgment**

AAA Waterproofing, Inc. ("AAA") has filed a Motion for Summary Judgment (ECF

No. 100), to which D.R. Horton and the Travelers Defendants have filed Responses

(ECF No. 126 & 157, respectively), and to which AAA has filed a Reply (ECF No. 165).

---

[7] The Court presumes that D.R. Horton seeks to amend its Complaint, at least in part, to undercut the aforementioned argument raised in the Motions to Dismiss filed by Specialist Paint and R.G.

[8] The Court is also not passing judgment on how it would rule on this argument if it were to deny D.R. Horton leave to amend.

In the Motion, AAA first argues that all of the Travelers Defendants' claims are barred by the statute of limitations found in the Construction Defect Action Reform Act ("CDARA"), Colorado Revised Statute section 13-80-104.  Specifically, they argue that (1) the construction defects at issue in the Construction Defects Litigation were made no later than 2001 when construction was complete, (2) the CDARA has either a six or eight year statute of limitations (*see* Colo. Rev. Stat. § 13-80-104(1)(a) & 2); and (3) the Travelers Defendants' Third-Party Complaint in this action was filed approximately 10 years after the construction ended, meaning their claims are necessarily time-barred under the CDARA.

This argument lacks merit.  Colorado courts have consistently held that the CDARA only applies to claims against building professionals based on injuries caused by defects in building construction improvements.  *See Two Denver Highlands Ltd. P'ship v. Dillingham Constr. N.A., Inc.*, 932 P.2d 827, 829 (Colo. App. 1996) ("The [CDARA] was intended to apply only to negligence in planning, design, construction, supervision, or inspection that results in a defect in an improvement to real property that causes an injury, and to limit actions against building professionals only for claims of injury arising from defects in the improvement they create."); *Irwin v. Elam Constr., Inc.*, 793 P.2d 609, 611 (Colo. App. 1990) ("[The CDARA] was intended to limit actions against building professionals only for . . . injury arising from defects in the improvements they create."); *Gleason v. Becker-Johnson Assocs., Inc.*, 916 P.2d 662, 665 (Colo. App. 1996) (stating that the CDARA applies only to the actual process of building construction).

This action is not a construction defects action.  It is an insurance coverage

dispute. D.R. Horton's claims against the Travelers Defendants are all based on the Travelers Defendants' alleged breach of their duty to defend D.R. Horton in the underlying action. The Travelers Defendants' claims against the Third-Party Defendants seek to hold the Third-Party Defendants accountable for their equitable share of D.R. Horton's defense fees and costs. This insurance coverage dispute does not fall within the CDARA, and therefore AAA's argument that the CDARA's statute of limitations bars the Travelers Defendants' claims lacks merit. The Court's discussion in Section III.A, *supra*, regarding Foster Frames' Motion to Dismiss constitutes the appropriate analysis of the timeliness of the Travelers Defendants' claims.

In its Motion, AAA also argues that the Travelers Defendants' claims against AAA are barred by the settlement – and more specifically the waiver and release – entered into between AAA and D.R. Horton in the Construction Defects Litigation. This argument clearly targets the Travelers Defendants' subrogation claims. (*See, e.g.*, ECF No. 100, at 8 ("[A] release granted by the subrogor insured to a third-party tortfeasor who is responsible for the loss and who is without notice or knowledge of an insurer's potential subrogation rights, is a bar to the insurer's claim of subrogation."); *see id.* at 10 ("[T]he Travelers Entities, as subrogees, cannot assert claims, which their insured does not possess."). The Court has already held that the Travelers Defendants' subrogation claims against the subcontractors (including AAA) are time-barred. Thus, the Court need not evaluate this argument, and so AAA's Motion for Summary Judgment as to this argument is denied as moot.[9]

---

[9] In its Reply, AAA for the first time makes a separate argument that the Travelers Defendants' contribution claim fails because AAA is not a "co-insurer" of D.R. Horton. Once

**F.     Mid-Century Insurance's Motion for Summary Judgment**

Finally, Mid-Century Insurance ("Mid-Century") has filed a Motion for Summary

Judgment (ECF No. 107), to which D.R. Horton and the Travelers Defendants have filed

Responses (ECF No. 121 & 158, respectively), and to which Mid-Century has filed a

Reply (ECF No. 161).  As discussed *supra*, the Court has held that the Travelers

Defendants' subrogation claims against the ***subcontractors*** are time-barred, and thus

the Court has not dismissed any of the claims brought by the Travelers Defendants

against Mid-Century Insurance.  Thus, the Court proceeds to analyze in full Mid-Century

Insurance's Motion for Summary Judgment.

Like AAA, Mid-Century argues in its Motion for Summary Judgment that Mid-

Century's settlement with D.R. Horton in the Construction Defects Litigation bars the

Travelers Defendants' claims against it in this action.  As pointed out in the briefing on

AAA's Motion for Summary Judgment, "a release by an insured to a third party

tortfeasor who is responsible for the loss, and who is without notice or knowledge of an

insurer's rights, is a bar to the insurer's claim to subrogation."  *State Farm Mut. Auto.*

---

again, the Court is not pleased with the fact that a party in this action chose to first brief this issue in detail in its Reply.  Although this argument is subject to waiver because it was raised for the first time in AAA's Reply, the Court proceeds to analyze and reject the argument.  AAA has failed to controvert the allegations in the Travelers Defendants' Third-Party Complaint that AAA did not take out a CGL policy covering D.R. Horton, and that AAA itself therefore owed D.R. Horton a defense in the Construction Defects Litigation.  Where two liability insurers owe their common insured a defense in litigation, a contribution claim can lie between those insurers. *See, e.g.*, *Republic Ins. Co. v. U.S. Fire Ins. Co.*, 444 P.2d 868, 870 (Colo. 1968) ("Contribution is a principle sanctioned in equity . . .  [p]ermitting one who has paid the whole loss to obtain reimbursement from other insurers who are also liable therefor."); *Colonial Ins. Co. of Cal. v. Am. Hardware Mut. Ins. Co.*, 969 P.2d 796, 801 (Colo. App. 1998) ("[I]n cases in which a liability insurer voluntarily pays more than its share of loss in the defense of an insured, the insurer is entitled to demand contribution of its defense costs and settlement payment from a second insurer.").

*Ins. Co. v. Sanditen*, 701 P.2d 876, 877 (Colo. App. 1985). "However, if the tortfeasor is chargeable with notice of the insurer's rights, and enters a settlement with the insured to which the insurer is not a party, the settlement may be regarded as having been made subject to the rights of the insurer." *Id.* Contrary to the efforts of AAA in its briefing on its Motion, here Mid-Century has made absolutely no effort to come forward with evidence showing that it was not on notice of the Travelers Defendants' alleged subrogation rights when Mid-Century entered into the underlying settlement with D.R. Horton. Therefore, there is a triable issue on that point, and Mid-Century Insurance is not entitled to summary judgment on the Travelers Defendants' subrogation claims (and there is also no basis to dismiss the equitable contribution claim or declaratory judgment claim).

Instead, Mid-Century has relied entirely on the case of *Trinity Universal Insurance Co. of Kansas, Inc. v. D.R. Horton, Inc.-Denver*, No. 07-cv-00600, 2009 WL 721814 (D. Colo. Mar. 16, 2009), to support its Motion. In *Trinity*, U.S. District Judge Philip A. Brimmer held that a live controversy no longer existed where Trinity had settled and released its claims against Mid-Century and Truck, and under that settlement Trinity explicitly assumed the risk that the court might apportion more liability to Mid-Century and Truck than the amount of the settlement. *Id.* at *2-*3. Because any excess liability of Mid-Century and Truck had been expressly assumed by Trinity, the Court held that there was no reason to keep Mid-Century and Truck in the case, and dismissed Mid-Century and Truck under Federal Rule of Civil Procedure 21. *Id.* at *3.

Mid-Century argues that the same ruling applies to it. Here, however, Mid-Century has pointed to no provision of the settlement agreement between it and D.R.

25

Horton whereby D.R. Horton explicitly assumed the risk of the possibility that Mid-Century would be found liable for an amount in excess of the settlement amount.  Thus, *Trinity* is very much inapposite to the circumstances here.  Instead, the rule in *Sanditen* applies, which Mid-Century has entirely failed to address.  The Travelers Defendants were not a party to the settlement between Mid-Century and D.R. Horton, and Mid-Century has not met its burden of showing that, at the time of the settlement between Mid-Century and D.R. Horton, Mid-Century was not on notice of the Travelers Defendants' potential subrogation rights.  *Sanditen*, 701 P.2d at 877.  Mid-Century's Motion for Summary Judgment must therefore be denied.

## IV.  CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

(1)    Third-Party Defendant Foster Frames, Inc.'s Motion to Dismiss (ECF No. 60) is GRANTED IN PART and DENIED IN PART;

(2)    The Travelers Defendants' equitable subrogation and contractual subrogation claims against AAA Waterproofing, Inc., Ark Construction Services, Inc., C & C Seamless Gutter Company, Concrete Management Corporation, D.A.S.H. Concrete, Inc., Dove Creek Enterprises, Inc., Foster Frames, Inc., J & K Pipeline, Inc., Jorge Romero d/b/a Specialist Paint, Level Masonry, Inc., Proto Construction and Paving, Inc., R.G. Insulation, Inc., The Cooler Company, Tri-Star Drywall, Inc., and WB Landscaping, Inc. are hereby DISMISSED WITH PREJUDICE;

(3)    Third-Party Defendant TIG Insurance's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) (ECF No. 58) is DENIED;

26

(4)    Third-Party Defendant Level Masonry, Inc.'s Motion to Dismiss (ECF No.
       129) is DENIED;

(5)    Third-Party Plaintiffs' Objection to Level Masonry, Inc.'s Motion to Dismiss,
       Requesting that the Court Strike Level Masonry's Motion to Dismiss and
       Order that Level Masonry File an Appropriate Motion Pursuant to
       Fed.R.Civ.P. 56 (ECF No. 160), which the Court construes as a motion to
       strike, is DENIED AS MOOT;

(6)    The Court defers ruling until a later date on Jorge Romero d/b/a Specialist
       Paint's Motion to Dismiss (ECF No. 159) and R.G. Insulation Co., Inc.'s
       Motion to Dismiss (ECF No. 171);

(7)    AAA Waterproofing, Inc.'s Motion for Summary Judgment (ECF No. 100)
       is DENIED IN PART and DENIED AS MOOT IN PART; and

(8)    Mid-Century Insurance's Motion for Summary Judgment (ECF No. 107) is
       DENIED.

Dated this 14th day of March, 2012.

                                        BY THE COURT:



                                        _____
                                        William J. Martínez
                                        United States District Judge