**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02826-WJM-KMT

D.R. HORTON, INC.-DENVER d/b/a TRIMARK COMMUNITIES, a Delaware
corporation, and
D.R. HORTON, INC., a Delaware corporation,

      Plaintiffs,

v.

THE TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut corporation,
TRAVELERS INDEMNITY COMPANY, a Connecticut corporation,
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, and
CHARTER OAK FIRE INSURANCE COMPANY, a Connecticut corporation,

      Defendants/Third-Party Plaintiffs,

v.

AAA WATERPROOFING, INC., a Colorado Corporation,
ARK CONSTRUCTION SERVICES, INC., a dissolved Colorado Corporation,
CONCRETE MANAGEMENT CORPORATION, a Colorado Corporation,
COURMEG LANDSCAPING DESIGN, LLC, a Colorado Limited Liability Company,
D.A.S.H. CONCRETE, INC., a Colorado Corporation,
DOVE CREEK ENTERPRISES, INC., a Colorado Corporation,
FOSTER FRAMES, INC., a Colorado Corporation,
J & K PIPELINE, INC., a Colorado Corporation,
JORGE ROMERO, d/b/a SPECIALIST PAINT,
LEVEL MASONRY, INC., a dissolved Colorado Corporation,
MID-CENTURY INSURANCE, a California Corporation,
PROTO CONSTRUCTION AND PAVING, INC., a Colorado Corporation,
R.G. INSULATION CO., INC., is a trade name of G.H. & W, Incorporated, a Missouri
Corporation,
TIG INSURANCE, a California Corporation,
THE COOLER COMPANY, a Colorado Corporation, and
ZURICH SPECIALTIES LONDON, LTD., a non-incorporated re-insurer,

      Third-Party Defendants.

## ORDER ON PENDING MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on numerous pending Motions for Summary
Judgment.  Specifically, Defendants/Third-Party Plaintiffs have filed a Consolidated
Motion for Summary Judgment and Motion for Determination of Law (ECF No. 358),
Plaintiffs have filed an Omnibus Motion for Summary Judgment (ECF No. 359), and
seven Third-Party Defendants have filed Motions for Summary Judgment (ECF No. 285,
287, 289, 299, 354, 355, 357.)  All of the pending Motions are now fully briefed and ripe
for adjudication.  The Court proceeds to analyze and rule on the Motions.

## I. BACKGROUND

### A.    Factual Background

Unless otherwise indicated, the following facts are undisputed.  In 1999, Plaintiff
D.R. Horton, Inc.-Denver d/b/a Trimark Communities ("DRH")[1] was engaged as the
general contractor for the construction of a residential community known as the Summit
at Rock Creek (the "Project"), consisting of approximately 43 buildings containing 226
townhouse units.  DRH engaged a number of subcontractors to perform construction
work on the Project.  The subcontracts between DRH and the subcontractors required
each of the subcontractors to carry a commercial general liability insurance policy ("CGL
policy") naming DRH as an additional insured party.  Defendants/Third-Party Plaintiffs
The Travelers Indemnity Company of America, The Travelers Indemnity Company, St.

---

[1] Plaintiff D.R. Horton, Inc.-Denver d/b/a Trimark Communities is a wholly owned
subsidiary of Plaintiff D.R. Horton, Inc.  For purposes of the pending Motions, the distinction
between the two entities is unimportant, and so for purposes of simplicity the Court will refer to
either entity or both entities simply as "DRH," and will refer to it in the singular.

Paul Fire and Marine Insurance Company, and Charter Oak Fire Insurance Company ("Travelers," also referred to in the singular) are four insurance companies, each of whom insured one or more of a group of four of those subcontractors (through a total of ten insurance policies).  The Third-Party Defendants brought into this action by Travelers are either subcontractors, insurers of subcontractors, or DRH's own insurer. Construction on the Project was completed in approximately 2001.

On February 3, 2003, the homeowners association for the Summit at Rock Creek ("HOA") brought suit against DRH in state court based on alleged construction defects or deficiencies associated with the Project ("Construction Defects Litigation").  DRH thereafter filed a third-party complaint in the Construction Defects Litigation against the subcontractors that had worked on the Project.

On August 14, 2003, DRH began tendering the defense of the Construction Defects Litigation to various subcontractors and their insurance companies, including Travelers.  Travelers responded by "agreeing to participate" in the defense of DRH, subject to a full reservation of rights.  During and after the conclusion of the Construction Defects Litigation, DRH was in negotiations with Travelers and other insurers regarding the extent of their obligations for payment of DRH's defense fees and costs in the Construction Defects Litigation.

On August 14, 2003, DRH also tendered the defense of the Construction Defects Litigation to its own insurer, Admiral Insurance Company ("Admiral").[2]  Admiral

---

[2] DRH contends that it only "provided Admiral with notice of" the Construction Defects Litigation.  However, the Court finds that the issue of whether the notice to Admiral constituted a tender of the defense to Admiral is immaterial.

responded by informing DRH that DRH would first have to pay its $200,000 self-insured retention (in essence, a "deductible") before Admiral would begin to pay the claim.  After DRH paid the entire deductible towards its defense fees and costs, Admiral (on February 18, 2005) began paying DRH's defense fees and costs.  DRH contends that it incurred approximately $1.2 million in fees and costs defending the Construction Defects Litigation.  In March 2005, DRH reached a settlement with the HOA in the Construction Defects Litigation in the amount of $39.5 million.

In terms of the negotiations between DRH and some of the subcontractors' insurers regarding the amount that each would contribute to DRH in defense fees and costs, it appears that DRH ultimately collected approximately $288,000 from those insurers.  Included in that amount is a total of $21,611.57 paid by Travelers to DRH (exclusive of interest), with the first payment being made on October 31, 2008.[3]

## B.   Procedural History

On October 20, 2010, DRH filed this action against Travelers in Colorado District Court, Jefferson County, bringing four claims for relief:  (1) declaratory judgment; (2) breach of contract; (3) bad faith breach of insurance contract under Colorado Revised Statute § 10-3-1116; and (4) violation of the Colorado Consumer Protection Act, Colorado Revised Statute § 6-1-105.  (ECF No. 1-1.)  In short, DRH's Complaint alleged that, although Travelers purported to accept DRH's tender of the defense of the Construction Defects Litigation, Travelers improperly delayed payment of DRH's defense fees and costs, and ultimately made inadequately low payments to DRH for

---

[3] The total amount actually paid by Travelers appears to have been $31,045.50, but that amount included interest.

those fees and costs.  (*Id.*)  On November 19, 2010, Travelers removed the action to

this Court on the basis of diversity jurisdiction (28 U.S.C. § 1332).  (ECF No. 1.)  More

recently, the Court allowed DRH to file a First Amended Complaint, in which DRH

clarified that it was seeking to recover from Travelers the full amount of its defense fees

and costs incurred in the underlying action.  (ECF No. 249; *see also* ECF No. 246.)

Notably, the briefing on the Motions for Summary Judgment now makes clear that DRH

is only seeking to recover from Travelers the difference between its total defense fees

and costs (approximately $1.2 million) and the amount that DRH was able to recover

from other subcontractors' insurers (approximately $266,000).  In other words, DRH is

seeking to recover from Travelers the $200,000 deductible DRH paid, and the

approximately $700,000 that Admiral paid in defense fees and costs (Admiral assigned

its claim for recovery to DRH).

Travelers has filed an Answer to the First Amended Complaint, which also

includes four counterclaims against DRH:  equitable contribution, equitable subrogation,

unjust enrichment, and declaratory judgment.  (ECF No. 258.)  Travelers' counterclaims

are brought in the event that the Court determines that Travelers paid more than its

equitable share of DRH's defense fees and costs, in which case Travelers seeks to

recoup the difference.  (*Id.*)

Travelers has also filed a Third-Party Complaint against certain subcontractors

who worked on the Project, insurers of certain subcontractors, and DRH's own insurer

Admiral. (ECF No. 30.)[4]  Travelers brings claims against those entities for equitable

subrogation, contractual subrogation, equitable contribution, and declaratory judgment.

(*Id.* ¶¶ 71-89.)  Travelers alleges that, to the extent it is found liable in this action for

more than its equitable share of DRH's defense fees and costs, the Third-Party

Defendants should be required to compensate Travelers for such excess liability.  (*Id.*)

Finally, two Third-Party Defendants – Mid-Century Insurance and the Cooler

Company – filed cross-claims against DRH, in which they alleged that they entered into

settlements with DRH in which DRH released them from any further liability in this

action.  (ECF No. 133, 216.)  Thus, these Third-Party Defendants allege that, to the

extent they are found liable to Travelers for contribution of any defense fees and costs,

DRH should have to pay those contributions.  (*Id.*)

On March 14 and April 9, 2012, the Court resolved five Motions to Dismiss filed

by Third-Party Defendants, as well as two then-pending Motions for Summary

Judgment filed by Third-Party Defendants AAA Waterproofing, Inc. and Mid-Century

Insurance.  (ECF No. 228.)  As part of that decision, the Court dismissed Travelers'

equitable subrogation and contractual subrogation claims against the third-party

subcontractors (but not the third-party insurers).  (*Id.*)  In all other respects, the Court

denied the pending Motions.  (*Id.*)

Since that decision, nine more Motions for Summary Judgment have been filed,

which are the Motions currently pending.  Specifically:

---

[4] Twenty-two Third-Party Defendants were originally named in Travelers' Third-Party Complaint.  According to the record, six of these Third-Party Defendants have been dismissed from the action, leaving sixteen remaining.  Of those sixteen, five have never appeared in the action.

- Travelers has filed a 70-page Consolidated Motion for Summary Judgment and Motion for Determination of Law ("Motion for Summary Judgment") (ECF No. 358). DRH filed a Response to this Motion (ECF No. 383), as did Third-Party Defendants Foster Frames, Inc. ("Foster Frames") (ECF No. 377) and Mid-Century Insurance (ECF No. 382). Travelers filed Reply briefs to all three Responses. (ECF No. 390-392.)

- DRH has filed a 66-page Omnibus Motion for Summary Judgment ("Motion for Summary Judgment") (ECF No. 359). Travelers filed a Response to this Motion (ECF No. 381), as did Mid-Century Insurance (ECF No. 385). DRH filed a Reply to those two Responses. (ECF No. 394.)

- Third-Party Defendant Jorge Romero d/b/a Specialist Paint ("Specialist Paint") has filed a Motion for Summary Judgment (ECF No. 285), to which Travelers has filed a Response (ECF No. 310), and Specialist Paint has filed a Reply (ECF No. 316; *see also* ECF No. 322, 324).

- Third-Party Defendant Ark Construction Services, Inc. ("Ark Construction") has filed a Motion for Summary Judgment (ECF No. 287), to which Travelers has filed a Response (ECF No. 311), and Ark Construction has filed a Reply (ECF No. 331).

- Third-Party Defendant Level Masonry, Inc. ("Level Masonry") has filed a Motion for Summary Judgment (ECF No. 289), to which Travelers has filed a Response (ECF No. 309), and Level Masonry has filed a Reply (ECF No. 313).

- Third-Party Defendant R.G. Insulation Co., Inc. ("R.G. Insulation") has filed a Motion for Summary Judgment (ECF No. 299), to which Travelers has filed a Response (ECF No. 312), and R.G. Insulation has filed a Reply (ECF No. 319).

- Third-Party Defendant TIG Insurance has filed a Motion for Summary Judgment (ECF No. 354), to which Travelers has filed a Response (ECF No. 380), and TIG Insurance has filed a Reply (ECF No. 389).

- Foster Frames has filed a Motion for Summary Judgment (ECF No. 355), to which Travelers has filed a Response (ECF No. 379), and Foster Frames has filed a Reply (ECF No. 393).

- Third-Party Defendant J&K Pipeline, Inc. ("J&K Pipeline") has filed a Motion for Summary Judgment (ECF No. 357), to which Travelers has filed a Response (ECF No. 378), and J&K Pipeline has filed a Reply (ECF No. 395).

It is safe to say that all pertinent issues have been fully briefed. The Court now

proceeds to analyze and resolve those issues addressed in the pending Motions.

## II.  LEGAL STANDARDS

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

As to claims where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotation marks omitted).  If the movant meets this burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671 (quotation marks omitted).

8

"Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979); *see also Sayed v. Profitt*, 743 F. Supp. 2d 1217, 1221 (D. Colo. 2010) ("The Tenth Circuit . . . has repeatedly directed that cross-motions for summary judgment be determined independently.").

On a Rule 56 Motion, the Court may also resolve particular legal issues (as opposed to legal claims) via summary adjudication. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – *or the part of each claim or defense* – on which summary judgment is sought.") (emphasis added); *Church Mut. Ins. Co. v. U.S. Liab. Ins. Co.*, 347 F. Supp. 2d 880, 882 (S.D. Cal. 2004) ("Summary adjudication may be appropriate on clearly defined, distinct issues. . . . [Summary adjudication] narrows the issues and enables the parties to recognize more fully their rights . . . .") (citations and internal quotations omitted); *Reeves v. Fed. Reserve Bank of Chi.*, No. 00 C 5048, 2003 WL 21361735, at *8 (N.D. Ill. June 12, 2003) ("A partial summary adjudication merely decides one or more issues in advance of trial; it may not be a judgment at all, let alone a final judgment on a separate claim. Thus, partial summary adjudication is an appropriate mechanism for resolving separate issues prior to trial.") (citation omitted).

## III.  ANALYSIS

Travelers' Motion for Summary Judgment and DRH's Motion for Summary Judgment brief many of the same issues.  Although the Court has analyzed each of these Motions independently, it makes the most sense for the Court to organize this Order based on the issues briefed in those two Motions, rather than having separate

sections for the two Motions.  After resolving each of the claims and issues addressed in those two Motions, the Court will proceed to address the Third-Party Defendants' Motions for Summary Judgment.

**A.      Travelers' and DRH's Motions for Summary Judgment**

      **1.      Timeliness of DRH's Claims**

Travelers moves for summary judgment on DRH's breach of contract claim and its claim under the Colorado Consumer Protection Act ("CCPA"), on the ground that those claims are barred by the applicable statutes of limitations.  (ECF No. 358, at 26-29, 46-48.)  DRH has also filed a cross-motion for summary judgment as to this issue, arguing that the Court should dismiss Travelers' affirmative defense regarding the statute of limitations.  (ECF No. 359, at 44-46.)

The Court agrees with Travelers that these two claims have a limitations period of three years (and DRH does not argue that any longer period applies).  *See* Colo. Rev. Stat. § 13-80-101(1)(a); Colo. Rev. Stat. § 6-1-115.  This action was filed on October 20, 2010.  (ECF No. 1-1.)  The determinative question, therefore, is whether these two claims accrued before or after October 20, 2007.

A cause of action for breach of contract "shall be considered to accrue on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence."  Colo. Rev. Stat. § 13-80-108(6).  A cause of action under the CCPA accrues on the date "the consumer [DRH] discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice" that underlies the claim.  Colo. Rev. Stat. § 6-1-115.

Travelers argues that DRH's claims accrued no later than the summer of 2006, more than four years prior to the filing of this action.  In support of that argument, Travelers points out that in the spring and summer of 2006, DRH was in negotiations with Travelers regarding how much Travelers should contribute to DRH's defense fees and costs in the Construction Defects Litigation.  After making a settlement offer to Travelers on May 22, 2006, and after not hearing back from Travelers, DRH sent a letter to Travelers on July 17, 2006 stating, *inter alia*,

> **To date, we have not received a response from you and as such, we request your immediate attention to this matter.  Your refusal to honor your defense obligations has resulted in a large number of defense expenses which still remain unpaid**. . . . [DRH] and its carriers will litigate their rights as to a full defense from [Travelers] for payment of 100% of the defense fees and costs in this case.  Absent immediate payment, all available remedies will be pursued.

(ECF No. 358-24 (emphasis in original).)  Travelers argues that this letter indicates that by that time DRH was already on reasonable notice of Travelers' breach.

DRH, on the other hand, argues that it was not on reasonable notice of Travelers' breach until October 31, 2008, when Travelers finally tendered (allegedly inadequately low) payments for DRH's defense fees and costs.  In further support, DRH cites the deposition testimony of Travelers' Rule 30(b)(6) representative, in which the representative stated that Travelers had no obligation to make any payment until October 31, 2008 because it was not until that time that DRH had provided Travelers with sufficient information regarding the Construction Defects Litigation.

The Court holds that triable issues of fact preclude summary judgment on this issue.  On the one hand, the language of the July 17, 2006 letter is sufficiently strong

such that a reasonable jury could conclude that DRH was already on notice at that point that Travelers was breaching its duty to defend.  However, significantly, Travelers had stated from the beginning that it "agreed to participate" in DRH's defense, so this case is much different than if Travelers had denied coverage from the outset.  A reasonable jury thus could also conclude that DRH's claims did not accrue until October 31, 2008, when DRH learned what the amount of Travelers' proposed payments were under that assumed defense.  Thus, Travelers is not entitled to summary judgment on this issue, and DRH is also not entitled to dismissal of Travelers' statute-of-limitations affirmative defense.[5]

### 2.    Breach of Contract Claim

### a.    Duty to Defend

In its Motion for Summary Judgment, DRH asks the Court to affirmatively rule that Travelers had a duty to defend DRH under each of the ten Travelers policies.  (ECF No. 359, at 24, 25-26.)  In its Response to DRH's Motion, Travelers concedes this point, stating, "Travelers has stipulated that it owed a duty to defend DRH under the Travelers Policies from and against the claims brought against DRH by the HOA in the [Construction Defects Litigation]."  (ECF No. 381, at 19.)  Thus, the Court grants DRH's Motion as to this issue.

---

[5] Notably, Travelers did not move for summary judgment on DRH's statutory bad faith claim on the ground that it was time-barred.  That claim may only have a two-year statute of limitations, an issue not briefed by the parties.  *See Alarcon v. Am. Family Ins. Grp.*, No. 08-cv-01171, 2010 WL 2541131, at *1 n.5 (D. Colo. June 18, 2010) (stating that a claim under Colo. Rev. Stat. § 10-3-1116 is a tort claim); Colo. Rev. Stat. § 13-80-102(1)(a) (two-year statute of limitations for tort claims).  However, because a reasonable jury could conclude that DRH's claim did not accrue until October 31, 2008 – less than two years prior to the date this action was filed – summary judgment based on the untimeliness of that claim would also not be appropriate.

DRH also asks the Court to affirmatively declare that, because of Travelers'

concession that it had a duty to defend DRH, Travelers has admitted that the HOA's

complaint in the Construction Defects Litigation has alleged a liability that was

potentially covered under each of the ten Travelers policies.  (ECF No. 359, at 24.)  In

response, Travelers concedes that "the HOA's Complaint . . . contained allegations that

were potentially covered, at least in part, under the Travelers Policies."  (ECF No. 381,

at 20.)  The Court does not find that Travelers' qualification "at least in part" is

meaningfully distinguishable from the ruling DRH seeks, and so concludes that DRH's

Motion is granted as to this issue as well.

### b. Whether the DRH-Admiral Policy Was an Excess Policy Relative to the DRH-Travelers Policies

In its Motion, DRH also seeks an affirmative ruling that Admiral's policy with DRH

was an excess policy in relation to Travelers' policy with DRH, which provided primary

coverage.  (ECF No. 359, at 26-30.)  In response, Travelers argues that Admiral's policy

with DRH (as well as Travelers' own policies insuring DRH) provided primary coverage.

(ECF No. 381, at 21-45.)  This issue, depending on how it is resolved, has numerous

implications in this case.  For example, Travelers argues that, because Admiral's policy

was primary, DRH cannot recover the $200,000 deductible it had to pay under the

Admiral policy.  Travelers also argues that, because Admiral's policy was primary, this

action is in essence a contribution action in which Travelers cannot be forced to pay

more than its equitable share of the defense fees and costs.  On the other hand, DRH

argues that, because the Admiral policy was an excess policy, this action properly

seeks to recover from Travelers the full amount of defense fees and costs that Travelers

was obligated to pay under its primary policies (and which neither DRH nor Admiral

were required to pay under the Admiral excess policy).

> In general, a primary liability policy provides the first layer of coverage,
> attaching immediately upon the happening of an occurrence or when a
> claim is made. . . .  By contrast, excess and umbrella policies protect the
> insured in the event of a catastrophic loss in which liability exceeds the
> available primary coverage.  An excess liability policy pays benefits only
> after the limits of the primary or underlying insurance policy have been
> exhausted.

*Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1103 (Colo. 2011) (citations, internal

quotations, and brackets omitted).  The issue of whether a policy provides primary or

excess coverage depends on the language of the policy.  *Id.* at 1107.

> It is undisputed that the Admiral policies have a clear provision which reads,

> This insurance is excess over any other insurance, whether primary,
> excess, contingent or on any other basis that is valid and collectible
> insurance available to the insured as an additional insured under a policy
> issued to . . . a contractor performing work for the insured . . . .  When this
> insurance is excess, [Admiral] will have no duty to defend any claim or
> "suit" that any other insured has a duty to defend.  If no other insurer
> defends, [Admiral] will undertake to do so, but [Admiral] will be entitled to
> the insured's rights against all those other insurers.

(ECF No. 359-18.)  This language clearly indicates that Admiral's coverage was excess

to coverage obtained by DRH as an additional insured through subcontractors' insurers.

Further, Travelers does not dispute that its coverage was primary.  Indeed, the

contracts between DRH and the subcontractors clearly state, "The parties intend and

agree that the coverage obtained by Contractor naming [DRH] as an additional insured .

. . shall apply on a primary basis with any insurance of [DRH] being excess coverage."

(ECF No. 1-2, 1-3, 1-4, 1-5.)  In the Court's view, the language is clear:  the Admiral

policy was an excess policy relative to the Travelers' policies.

14

Travelers spends twenty-four pages of its Response to DRH's Motion attempting to piece together strained arguments calling into question whether Admiral's policy should be treated as excess.  Travelers' primary argument appears to be that Admiral's duty to defend was only excess as to certain parts of the Construction Defects Litigation, but was primary as to other parts.  Travelers' argument is based on the idea that the insurers' defense obligations were tied directly to underlying liability/indemnity in the Construction Defects Litigation and that, for example, Admiral had a primary duty with respect to DRH's own liability for construction defects.  This argument fails.  *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) ("The duty to defend is separate and distinct from an insurer's obligation to indemnify its insured. . . . [T]he duty to defend [is] a broader concept than the duty to indemnify."); *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996) (stating that there can be a duty to defend even if there is ultimately no duty to indemnify).  Here, the terms of the policies make clear that Admiral's policy was excess, Travelers' policies were primary, and Travelers' duty to defend was complete (not some partial duty tied to indemnity).

Travelers also appears to suggest that because Admiral stepped up and promptly began paying DRH's defense fees and costs, and because in settlement communications DRH proposed that Admiral pay a share of defense fees and costs, Admiral's policy should be treated as primary.  The argument fails because the terms of the policies govern.  The Court will enforce the terms of the policies, and will not issue an order that punishes Admiral for stepping up and providing a defense and awards Travelers for significantly delaying any payment and then paying approximately $21,000 in defense fees and costs.

Given that Admiral's policy was excess in relation to Travelers' primary policies, and given that DRH paid a $200,000 deductible under the Admiral policy and Admiral paid approximately $700,000 in defense fees and costs (a claim assigned to DRH), Travelers is obligated to reimburse DRH for these amounts.

### c.     Joint and Several Liability

Both Travelers and DRH move for summary adjudication on the issue of whether Travelers' obligation to provide a defense to DRH was a joint-and-several obligation. (ECF No. 358, at 56-62; ECF No. 359, at 30-33.)  Both parties concede that Colorado courts have not affirmatively resolved the issue of whether a liability insurer's duty to defend is a joint-and-several obligation where there are other insurers who also have a duty to defend.  (ECF No. 358, at 57; ECF No. 359, at 31.)  However, there is sufficient authority indicating that, if the Colorado Supreme Court were to address the issue, it would hold that each liability insurer has a duty to provide a complete defense, such that a liability insurer who breaches this duty can be found liable for the entire amount of defense fees and costs (and that insurer can then seek equitable contribution from any co-insurers).

This is the majority view in other jurisdictions.  *See, e.g.*, *U.S. Fid. & Guar. Co. v. Cont'l Ins. Co.*, Nos. CV-04-29-BLG-RFC, CV-08-29-BLG-RFC, 2010 WL 4102250, at *2 (D. Mont. Oct. 18, 2010) ("[A] majority [of jurisdictions] hold that when multiple insurers with successive policy periods have a duty to defend, each insurer is severally liable to the insured for the entire cost of the defense."); *Haskel, Inc. v. Superior Court*, 39 Cal. Rptr. 2d 520, 526 n.9 (Cal. Ct. App. 1995) ("[W]e will treat Hartford's acceptance of a 13% share of the defense burden as the equivalent of a defense denial.  Such a

unilateral limitation of its responsibility is not justified.  If it owes any defense burden it must be fully borne with allocation of that burden among other responsible parties to be determined later."); *Mendes & Mount v. Am. Home Assur. Co.*, 467 N.Y.S.2d 596, 598 (N.Y. App. Div. 1983) (Th[e] duty to defend . . . extends to a defense of the entire action. Plaintiffs' right to recover the entire amount expended in the defense from American Home cannot be diminished because there may be additional insurers which may also have duties to defend.  At this time, it is premature to decide whether or not American Home has any claim for contribution against the third-party defendants."); *Nutmeg Ins. Co. v. Employers Ins. Co. of Wausau*, No. Civ.A. 3:04-CV-1762B, 2006 WL 453235, at *14 (N.D. Tex. Feb. 24, 2006) ("The insurer has a duty to defend its insured, not a duty to provide a pro rata defense.  When a claim falls partially within and partially outside of a coverage period, the liability insurer's duty is to provide its insured with a complete defense . . . .") (citation omitted); *Newmont USA Ltd. v. Am. Home Assur. Co.*, 676 F. Supp. 2d 1146, 1158 (E.D. Wash. 2009) ("[A]n insured is entitled to a full and complete defense from every insurer having a duty to defend. . . .  Any contrary rule would encourage foot dragging by insurers and potentially leave the insured without a prompt and proper defense.").[6]

---

[6] Further, the Tenth Circuit has suggested the same.  In *Signature Development Companies, Inc. v. Royal Insurance Company of America*, the Court found that Royal Insurance Company had breached its duty to defend, despite the existence of other liability insurers, because Royal's actions "[did] not amount to an active ***independent*** defense of [the underlying claims]. . . . [T]he fortuitous existence of another insurer who was willing to meet its own obligations did not excuse Royal from discharging its duty to defend. . . . [T]he district court's [ultimate] noncoverage ruling did not excuse Royal from ***fully*** defending the claims in the first instance."  230 F.3d 1215, 1220 (10th Cir. 2000) (emphasis added).

Secondary legal sources also agree.  *See, e.g.*, Scott C. Turner, Insurance

Coverage of Construction Disputes § 7:21 (2012) ("Where multiple policies cover the

same risk, carriers have a joint and several obligation to defend the insured. . . . An

insurer providing a defense is generally entitled to recover apportioned shares of the

costs from coinsurers."); 1-5 Construction Insurance: Coverages and Disputes § 5-2

("When a contractor has more than one insurer providing coverage for a claim, each

insurer has an *independent and indivisible* duty to provide a defense.") (emphasis

added).

As a consequence, with respect to the issue of joint and several liability, DRH's

Motion is granted, and Travelers' Motion is denied.  The Court holds that DRH is entitled

to recover from Travelers the full uncollected amount of defense fees and costs in this

action, which DRH represents to be approximately $900,000.

### d.    Breach of Duty to Defend

DRH also moves for summary judgment on its simple breach of contract claim,

seeking an affirmative ruling that Travelers breached its duty to defend.  Travelers has

conceded that it had a duty to defend DRH in the Construction Defects Litigation.

Several aspects of Travelers' conduct (*e.g.*, its delay in making any payment of defense

fees and costs, and the low payments it ultimately made), when considered together,

lead the Court to rule that Travelers did in fact breach its duty to defend.  *See Signature*

*Dev. Cos., Inc.*, 230 F.3d at 1220 (affirmatively ruling that insurer breached its duty to

defend where, "[r]ather than discharging its duty to defend, [the insurer] was

nonresponsive to settlement overtures, failed to communicate with its insured, and

failed to fully cooperate in settlement negotiations. . . . [Nothing] excuse[d] [the insurer]

18

from fully defending the claims in the first instance.").  The Court affirmatively holds that DRH is the prevailing party on its Second Claim for Breach of Contract against Travelers.  Damages will be determined at trial.

There is no doubt that, with open communication between insureds and multiple liability insurers, the insured's defense can be fully paid with prompt and fair *pro rata* contributions from each liability insurer.  With insureds and insurers working well together in this way, insurers never have to pay more than their *pro rata* share. However, when insurers delay payment for years, and then make payments based on an allocation method designed to significantly limit their *pro rata* share, they open themselves up to the possibility of being sued jointly and severally for the full amount of defense costs.

### e.    Travelers' Policy-Based Affirmative Defenses

DRH also moves for dismissal of certain policy-based affirmative defenses raised by Travelers in its Answer to DRH's Complaint.  (ECF No. 359, at 42-43.)  Both parties agree that Travelers had a duty to defend DRH in the Construction Defects Litigation. With that point established, the Court at this stage of the proceedings is not going to evaluate which of Travelers' affirmative defenses remain fully viable, which do not remain viable at all, and which only remain partially viable.  DRH's Motion as to this issue is denied without prejudice.

### f.    Allocation Method

Travelers moves for summary adjudication on the issue of the proper method of allocation between DRH, Travelers, and other insurers and subcontractors brought into this action as third-party defendants.  (ECF No. 358, at 62-67.)  In short, Travelers

19

argues that the extent of the obligation to contribute to DRH's defense fees and costs should be tied to the underlying liability for construction defects.  Thus, for example, if Travelers' insureds were responsible for five percent of the total liability for construction defects, Travelers should have to contribute five percent of DRH's defense fees and costs.  DRH does not take a position on this issue, because it has claimed entitlement to the full amount of its defense fees and costs.  (ECF No. 383, at 58 ("DRH doesn't care how Travelers and the Third-Party Defendants allocate DRH's defense fees and costs amongst themselves. . . . DRH doesn't have a dog in [that] fight.").)  Foster Frames has filed a Response to Travelers' Motion in which it argues, *inter alia*, that Travelers' methodology is not reliable, and that determining this issue is premature. (ECF No. 377, at 11-13.)

In order to better hone issues for trial and for future determinations regarding contribution, the Court will clarify here that it will not employ Travelers' proposed method of allocation.  The Court understands that in certain cases it might be appropriate to allocate defense fees and costs based on respective underlying liability, for example, in cases in which the judgment clearly indicates the extent to which each party in the underlying litigation was found liable.  (*See* ECF No. 358, at 67 (cases cited by Travelers in which defense obligations were apportioned based on underlying liability).) Here, however, there was a settlement in the Construction Defects Litigation, and as a result in these circumstances there is no workable and reliable method for identifying the respective liability of each subcontractor for the underlying construction defects. The Court, however, need not yet determine what the appropriate method of allocation will be in this case, whether it be based on even shares per subcontractor, or based on

20

policy limits, or some other method.  Given that the Court is now faced only with Travelers' request that the Court adopt its proposed method, the Court simply clarifies that it will not do so.  Travelers' Motion is denied as to that issue.

### 3.     DRH's Statutory Claim for Bad Faith Breach of Insurance Contract

Travelers also moves for summary judgment on DRH's claim for bad faith breach of insurance contract under Colorado Revised Statute §§ 10-3-1115, 10-3-1116.  First, Travelers argues that the statute does not apply to DRH's claim because DRH is not a "first-party claimant" under the statute.  Section 10-3-1116 allows a "first-party claimant" to recover under the statute for unreasonable denial or delay of payment of benefits under an insurance contract.  Section 10-3-1115(1)(b)(I) defines "first-party claimant" as someone "asserting an entitlement to benefits ***owed directly to or on behalf of an insured*** under an insurance policy" (emphasis added).

There appears to be at least mild tension in the law regarding whether a claim under a liability insurance policy is a first-party or third-party claim.  Indeed, a claim for benefits under a liability insurance policy is always based on an underlying claim between the insured and a third-party, as is the case here.  The Court supposes that reasonable minds could differ on whether a claim for indemnification under a liability insurance policy would fall within the statute, because it could be argued that the benefits are owed to the third-party in the underlying suit.  However, where the claim is brought by the insured seeking to recover its own incurred defense fees and costs, as is the case here, the Court finds it indisputable that the benefits are "owed directly to or on behalf of [the] insured," and thus is a first-party claim.  Colo. Rev. Stat. § 10-3-

1115(1)(b)(I); *see also Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010) (stating that a third-party claim is one in which "an insurance company acts unreasonably in investigating, defending, or settling *a claim brought by a third person against its insured.*") (emphasis added); *Sterling Constr. Mgmt., LLC v. Steadfast Ins. Co.*, No. 09-cv-02224, 2011 WL 3903074, at *12 (D. Colo. Sept. 6, 2011) ("Were Overland and Willbros seeking benefits from Steadfast as third-party beneficiaries of Sterling's policy, the first-party element would not be met, but because Sterling is the named insured, seeking benefits payable under its own policy, a claim under § 1116 may lie."). Travelers' argument on this issue fails.

Travelers also argues that DRH should not be able to recover damages under section 10-3-1116 as to the portion of defense fees and costs that Admiral originally paid, because DRH's claim for recovery of such damages is an assigned claim from Admiral, and the right to recover a penalty is not assignable. While creative, this argument also fails. DRH's claim against Travelers is based on their insured-insurer relationship, and the question is whether Travelers acted in bad faith in delaying payment on its insured's tendered claim, and then paying allegedly inadequately low amounts to its insured. The claim is not Admiral's claim, it is DRH's – Travelers' insured. To hold otherwise would create a windfall for Travelers by the fact that Admiral stepped up under an excess policy and paid the majority of DRH's defense fees and costs. Travelers' Motion for Summary Judgment on DRH's statutory bad faith claim is denied.

For its part, DRH also moves for summary judgment on its statutory bad faith claim, arguing that Travelers' conduct was unreasonable as a matter of law. (ECF No.

35-41.)  While the Court has found that Travelers breached its contractual obligations to DRH, the Court is not willing to take the further step of ruling that Travelers' conduct was unreasonable as a matter of law.  That issue is appropriately left for the jury to decide.  *See McGregor v. Paul Revere Life Ins. Co.*, 92 F. App'x 412, 416 (9th Cir. 2004) ("[T]he reasonableness of an insurer's conduct was a factual question appropriately left for the jury.")  DRH's Motion for Summary Judgment on its statutory bad faith claim is also denied.

### 4.    DRH's Claim Under the Colorado Consumer Protection Act

Travelers also moves for summary judgment on DRH's claim brought under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101, *et seq.*  "The CCPA was enacted to regulate commercial activities and practices which, because of their [deceptive or unfair] nature, may prove injurious, offensive, or dangerous to the public."  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 146 (Colo. 2003) (quotation marks omitted).

To prove a private cause of action under the CCPA, a plaintiff must show:

(1) that the defendant engaged in an unfair or deceptive trade practice;

(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;

(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;

(4) that the plaintiff suffered injury in fact to a legally protected interest; and

(5) that the challenged practice caused the plaintiff's injury.

*Id.* at 146-47.

Among other elements, Travelers argues that DRH has failed to come forward with sufficient evidence to create a triable issue on the third element, *i.e.*, whether Travelers' alleged deceptive trade practices significantly impact the public.[7]  The relevant factors to consider in evaluating whether a challenged practice significantly impacts the public are

> (1) the number of consumers directly affected by the challenged practice, (2) the relevant sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.

*Id.* at 149.

Prototypical CCPA claims have wide public impact, such as those involving consumer products purchased on a large scale by the public.  *See, e.g.*, *Watson v. Dillon Cos., Inc.*, 797 F. Supp. 2d 1138, 1160-61 (D. Colo. 2011); *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1185-86 (D. Colo. 2002).  Although a CCPA claim can lie in the insurance context, *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47 (Colo. 2001), "the fact that a[n] insurer and an insured have a dispute over a claim does not necessarily mean that other members of the public are or have been affected by the insurer's practices," *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 156 (Colo. 2007).

---

[7] Previously, Travelers filed a Rule 12(b)(6) motion on this same ground.  (ECF No. 7.) At that early stage of the proceedings, the Court held that, although it was a close issue, DRH had sufficiently plead public impact.  (ECF No. 218, at 9-11.)  That is entirely different from the question now presented, however, of whether DRH has come forward with sufficient evidence at the summary judgment stage of establishing that Travelers' practices significantly impact the public.

The case of *Coors v. Security Life of Denver Insurance Co.*, 91 P.3d 393 (Colo. App. 2003), typifies a close case regarding whether there was sufficient public impact under the CCPA in the insurance context. There, the Colorado Court of Appeals held that an insured did not establish public impact where the insurer's allegedly wrongful practices affected 200 out of the insurer's 20,000 policy holders, stating, "an impact on at most one percent of the policyholders could not constitute public impact." *Id.* at 399. On an appeal to the Colorado Supreme Court, in which six justices heard the appeal, the justices split evenly on the issue, and therefore affirmed the decision of no public impact. *See Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 63-64 (Colo. 2005).

The claims in this action involve only how Travelers handled DRH's own claim for benefits arising out of the Construction Defects Litigation. The Court finds that DRH has not put forward sufficient evidence of Travelers' policies affecting a broader range of its insured. For example, DRH has pointed to letters in the record in which Travelers also made the same coverage decisions regarding another construction defects case, one in which the claim for benefits was also made by DRH as an additional insured under subcontractors' insurance policies. (ECF No. 383, at 35, Exs. 4 & 5.) Thus, in actuality, DRH has only shown that the challenged policies have impacted it and it alone.[8]

Also, in terms of the "relevant sophistication and bargaining power of the consumers affected by the challenged practice," *Rhino Linings,* 62 P.3d at 149, DRH had much more equality of bargaining power with Travelers compared to, for example,

---

[8] DRH argues that the testimony of Travelers' Rule 30(b)(6) deponent indicated that Travelers attempts to make consistent coverage decisions to all of its insureds, which indicates that other insureds must have been impacted in the same way as DRH. (ECF No. 383, at 35.) This argument is entirely unpersuasive on many levels.

an unsophisticated individual consumer entering into a contract with an insurance company.  Thus, DRH has fallen far short of its burden at the summary judgment stage of showing public impact.  Because DRH has failed to come forward with sufficient evidence on an essential element of its CCPA claim, the Court grants summary judgment in favor of Travelers on DRH's CCPA claim.  *See Wedbush Morgan Sec., Inc. v. Kirkpatrick Pettis Capital Mgmt., Inc.*, No. 06-cv-00510, 2007 WL 1097872, at *8-*9 (D. Colo. Apr. 9, 2007) (dismissing CCPA claim because plaintiff had failed to establish "essential element" of public impact).

### 5.     Further Damages Issues

Travelers raises several other damages-related issues in its Motion for Summary Judgment.  The Court expects that resolution of these issues will also better focus the parties on their respective bargaining positions in this action, hopefully leading towards a global settlement of the remaining claims in this action.

### a.     Double Recovery of Actual Damages

Travelers argues that DRH should not be entitled to any double-recovery of the defense fees and costs it seeks (for example, by recovering the total joint-and-several amount from each of the four Defendants).  (ECF No. 358, at 48-51.)  In response, DRH concedes that "it seeks only a single recovery of its actual damages [and so] the point is undisputed."  (ECF No. 383, at 38-39.)  Thus, in terms of actual damages, the Court holds that DRH will not be entitled to recover more than the approximately $900,000 it

seeks.[9]

### b.   Double Damages Under Colo. Rev. Stat. § 10-3-1116

The point of disagreement between the parties which may be the biggest hurdle

presently impeding a successful settlement of this entire action is the extent of the

damages that can be recovered under Colorado Revised Statute § 10-3-1116.  That

statute provides, in relevant part, "A first-party claimant . . . whose claim for payment of

benefits has been unreasonably delayed or denied may bring an action in a district court

to recover reasonable attorney fees and court costs and ***two times the covered***

***benefit***."  Colo. Rev. Stat. § 10-3-1116(1) (emphasis added).  Travelers argues that the

double damages award under this statute should apply on a per-claimant basis, *i.e.*,

because DRH itself is the only claimant under the relevant policies issued by Travelers,

it would be limited to a doubling of its actual damages under the statute (*i.e.*,

approximately $1,800,000).  (ECF No. 358, at 51-53.)  DRH argues, on the other hand,

that, should it prevail on its statutory bad faith claim, it should be entitled to a doubling of

its actual damages on each of the ten policies issued by Travelers in which DRH was an

additional insured (*i.e.*, approximately $18,000,000).  (ECF No. 39-49.)  The parties also

point out that the statute could, alternatively, be interpreted to authorize a doubling of

damages as to each Defendant who allegedly acted in bad faith (here, four Defendants,

---

[9] The precise amount sought by DRH is still unclear.  Travelers points to DRH's Third Supplemental F.R.C.P. 26(a)(1)(A) Disclosure which indicates that the actual amount sought is approximately $960,000, although DRH represents that the amount is approximately $900,000. (ECF No. 358-34, at 3.)  Also, according to DRH, Travelers intends to call at trial an expert who will call into question the reasonableness of the defense fees and costs that DRH allegedly incurred in defending the Construction Defects Litigation, thus further calling into question how much will be recovered.  (*See* ECF No. 359, at 34-35 n.23.)

meaning approximately $7,200,000).

The parties explain that there is no case law directly addressing this issue, and the Court has found none.  Instead, the parties look to the language of the statute, and DRH also points to the legislative history of the statute.  The Court finds that neither of the parties' arguments are particularly persuasive as to the statutory language or legislative history.  The proper interpretation of Colorado Revised Statute § 10-3-1116(1) on this issue is an issue of first impression.  After careful consideration of the public policy issues implicated by the resolution of this dispute, the Court rules that, under the particular facts and circumstances of this case, it would be inequitable for DRH to recover under Colorado Revised Statute § 10-3-1116 more than double its actual damages.[10]  As a consequence, given the facts presented here, the Court grants Travelers' Motion on this issue and will not permit DRH to recover more than double its actual damages on its bad faith claim.

### c.   Statutory Penalties Under Bad Faith Statute and CCPA

Travelers also argues that DRH should not be allowed to recover both double damages under its bad faith claim, and treble damages under its CCPA claim.  (ECF

---

[10] In other contexts, courts have declined to allow multiple recoveries of punitive damages.  *See Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 822 (Colo. 1992) ("Generally, a plaintiff may not recover both treble damages and punitive damages premised on the same facts because such damage awards serve similar purposes."); *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) (stating that, where a jury awards statutory penalties under one claim, and punitive damages under another claim, "To prevent double recovery, the party must then elect to accept either the award of treble damages or the compensatory plus punitive damages award."); *Sanderson v. Allstate Ins. Co.*, 738 F. Supp. 432, 435 (D. Colo. 1990) (allowing two independent claims authorizing punitive damages to go to the jury, but stating, "Should a jury award exemplary or punitive damages under more than one claim, the court has adequate power to prevent double recovery through offsets or other post verdict adjustment of the awards before judgment is entered.").

No. 358, at 53-56.)  Because the Court has granted summary judgment in favor of Travelers on DRH's CCPA claim, this issue is now moot.

### d.    Single Recovery of Attorneys' Fees and Costs

Travelers further argues that DRH should not be able to recover its attorneys' fees and costs in this action twice (doubled), once under the bad faith claim and again under the CCPA claim.  (ECF No. 358, at 56.)  DRH concedes the point (ECF No. 383, at 49-50), but nevertheless the issue is also now moot because the Court has granted summary judgment in favor of Travelers on DRH's CCPA claim.

### 6.    Travelers' Counterclaims Against DRH

DRH also seeks summary judgment on Travelers' counterclaims against DRH. Travelers paid DRH $21,611.57, exclusive of interest, towards DRH's defense fees and costs, and all of Travelers' counterclaims are brought only "to the extent that the Travelers Defendants paid more than their respective share of the defense fees and costs arising out of the defense of [DRH] in the [Construction Defects Litigation]."  (ECF No. 258, ¶ 23; *see also id.* ¶¶ 27, 29.)  Here, the Court has held that Travelers breached its duty to defend DRH, and is jointly and severally liable for DRH's defense fees and costs.  While the total reasonable amount of DRH's defense fees and costs appears to still be in dispute, the evidence clearly indicates that the figure is in the hundreds of thousands of dollars (with Travelers potentially being able to recoup some of that total amount via its contribution claims).  While the Court believes that damages and contribution issues as to ***amount*** are properly left for trial, the Court is convinced that no reasonable juror could conclude that the amount of Travelers' joint-and-several liability

is less than $21,611.57.  Thus, DRH's Motion for Summary Judgment as to Travelers' counterclaims is granted.  Travelers' counterclaims are dismissed with prejudice.

### 7.    Cross-Claims Against DRH by Mid-Century Insurance

Finally, DRH moves for summary judgment as to the cross-claims brought against it by Mid-Century Insurance.  As background, DRH was previously in negotiations not only with Travelers about how much Travelers should contribute to DRH's defense of the Construction Defects Litigation, but was also in such negotiations with Mid-Century Insurance.  Mid-Century Insurance ultimately paid DRH $115,000.00 towards DRH's defense fees and costs, and Mid-Century Insurance and DRH entered into a settlement codifying their agreement.  (ECF No. 359, at 46-53.)  After Travelers filed its claims against the Third-Party Defendants in this action, Mid-Century Insurance filed two cross-claims against DRH.  (ECF No. 216.)  Those cross-claims, in essence, argue that DRH breached the settlement agreement (and the covenant of good faith and fair dealing contained therein) by purporting to release Mid-Century Insurance from any and all claims related to DRH's defense fees and costs in the Construction Defects Litigation.  Because Travelers is now bringing claims against Mid-Century Insurance to recover Mid-Century Insurance's share of those defense fees and costs, Mid-Century Insurance alleges that D.R. Horton breached its promise that Mid-Century Insurance would not be sued for such defense fees and costs.[11]

---

[11] On March 14, 2012, the Court denied Mid-Century Insurance's Motion for Summary Judgment, in which it argued that the settlement should bar Travelers from being able to pursue its subrogation claims against Mid-Century Insurance.  (ECF No. 228.)

Summary judgment in favor of DRH is appropriate on Mid-Century Insurance's cross-claims against DRH. "[A]lthough a settlement agreement may bind parties who have notice, regardless of what a settlement agreement states, a party cannot release property, money or claims it does not own." *In re Reichmann Petroleum Corp.*, 434 B.R. 790, 796 (Bankr. S.D. Tex. 2010). Travelers' equitable contribution claim is its own claim based on its exposure to joint and several liability for DRH's defense fees and costs. *See Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 211 (2d Cir. 2000) ("[T]he contract of settlement an insurer enters into with the insured cannot affect the rights of another insurer who is not a party to it. Instead, whatever obligations or rights to contribution may exist between two or more insurers of the same event flow from equitable principles."). The critical point here is that Travelers' equitable contribution claim was never DRH's claim to release. DRH had no legal basis upon which it could contract with Mid-Century Insurance in a way that would guarantee that Mid-Century Insurance could never be sued by a third-party who has a right in equity to recover contribution from Mid-Century Insurance, and Mid-Century knew as much when it settled with DRH. Summary judgment is granted in favor of DRH on Mid-Century Insurance's cross-claims. The cross-claims are dismissed with prejudice.

Further, the Court notes that Foster Frames has also filed very similar cross-claims against DRH (ECF No. 133), but DRH failed to move for summary judgment on those claims. However, given that (1) Foster Frames's cross-claims are virtually identical to those asserted by Mid-Century Insurance; (2) Foster Frames could have opposed DRH's Motion for Summary Judgment as to Mid-Century Insurance's cross-claims, given their similarity, but declined to do so; and (3) any opposition by Foster

Frames would have been futile, the Court also grants summary judgment in favor of DRH on Foster Frames' cross-claims. *See Johnson v. Weld Cnty, Colo.*, 594 F.3d 1202, 1214 (10th Cir. 2010) ("Though we generally don't favor the granting of summary judgment *sua sponte*, a district court may do so if the losing party was on notice that [it] had to come forward with all of [its] evidence. And even if such notice is lacking, we will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice.") (citations and internal quotations omitted); *cf. Zinna v. Cook*, 428 F. App'x 838, 841 (10th Cir. 2011) ("Many courts have countenanced the *sua sponte* grant of summary judgment to a non-moving defendant, provided the basis for the ruling in favor of the moving defendants applies as well to the non-movant and the plaintiff was not prejudiced by being unaware of the need to make his case against all.").

### 8.   Travelers' Motion to Strike

On October 30, 2012, Travelers filed a Motion to Strike Portions of Reply in Support of Plaintiffs' Omnibus Motion for Summary Judgment or, Alternatively, Motion to Submit Sur-Reply. (ECF No. 396.) Therein, Travelers argues that DRH raised two new arguments in its Reply brief that had not been raised in DRH's Motion. (ECF No. 396.) Because this Order does not rely on the allegedly new arguments raised in DRH's Reply, Travelers' Motion to Strike is denied as moot.

### B.   Third-Party Defendants' Motions for Summary Judgment

### 1.   Specialist Paint's Motion

Specialist Paint moves for summary judgment on Travelers' claims brought against it. (ECF No. 285.) In short, Specialist Paint argues that its settlement with DRH

in the Construction Defects Litigation released all claims against Specialist Paint, including those for recovery of DRH's defense fees and costs.  Thus, Specialist Paint argues, Travelers' claims for equitable contribution and declaratory judgment against Specialist Paint must be dismissed.  However, as stated above, "[a]lthough a settlement agreement may bind parties who have notice, regardless of what a settlement agreement states, a party cannot release property, money or claims it does not own." *In re Reichmann Petroleum Corp.*, 434 B.R. at 796.  Travelers' equitable contribution claim is its own, and was never one that DRH could release in its settlement with Specialist Paint.  The DRH-Specialist Paint settlement agreement cannot be read to release claims DRH did not own.[12]  Specialist Paint's Motion for Summary Judgment is denied.[13]

### 2.    Ark Construction's Motion for Summary Judgment

Ark Construction moves for summary judgment on Travelers' contribution claim on the grounds that (1) it is not a "co-insurer" of DRH with Travelers; and (2) even if it is a co-insurer, it did not insure the same risk.

---

[12] The Court understands the Third-Party Defendants' argument that the Court's ruling in this regard violates the policy supporting settlement.  While the Court is cognizant of this countervailing concern, that concern is trumped by the fact that DRH cannot settle claims it does not own.  *See Emp'rs Ins. Co. of Wausau v. Travelers Indem. Co.*, 46 Cal. Rptr. 3d 1, 6 (Cal. Ct. App. 2006) ("Defendants provide no authority for their ipse dixit claim that policies favoring the encouragement of settlements militate a rule that would permit a coinsurer to evade its share of the defense burden by separately settling with its insured."); *Century Indem. Co. v. Liberty Mut. Ins. Co.*, 815 F. Supp. 2d 508, 513 (D.R.I. 2011) (expressing concern that condoning such settlements could create an incentive for an insurer to [quickly settle for a limited amount] to avoid paying contribution to a coinsurer") (internal quotations omitted).

[13] Because Specialist Paint is not entitled to summary judgment, it is also not entitled to its attorney's fees and costs, which it claims entitlement to under Colorado Revised Statute § 13-17-102 on the ground that Travelers' claims against it are groundless and vexatious.

The Court previously addressed, and rejected, this argument in a footnote in the Court's Order denying AAA Waterproofing, Inc.'s Motion for Summary Judgment (an argument that had not been raised until AAA's Reply brief).  (ECF No. 228, at 23-24 n.9.)  The Court proceeds to address, and reject, Ark Construction's argument for the same reason.  The subcontract between DRH and Ark Construction required Ark Construction to carry Broad Form Commercial General Liability Insurance naming DRH as an additional insured.  Ark Construction apparently failed to do so (and now asks the Court to render a benefit to it for failing to do so).  In the subcontract, Ark Construction also specifically agreed to "defend" DRH against "any and all claims . . . (including all costs thereof and attorneys' fees)" arising out of construction defects caused by Ark Construction.  (ECF No. 287-1.)  By failing to acquire such liability insurance, Ark Construction assumed the risk of having to itself insure DRH for any such claims.  *See Richmond v. Grabowski*, 781 P.2d 192, 194 (Colo. App. 1989) ("In general, the party who agrees to procure the insurance and fails to do so assumes the position of the insurer and, thus, the risk of loss."); *Steamboat Dev. Corp. v. Bacjac Indus., Inc.*, 701 P.2d 127, 128 (Colo. App. 1985) ("The owner breached the contract by failing to obtain all risk insurance in the interest of the contractor. . . . Thus, the owner in effect became the insurer of the contractor and was liable to it for its losses to the same extent as an insurance carrier would have been liable had insurance been obtained.").  Moreover, although there are not two insurance policies to compare to verify that Travelers and Ark Construction were insuring the same loss, the fact that the duty to defend is complete (resulting in potential joint-and-several liability for each insurer) makes this sufficiently clear.

34

3.      **Motions for Summary Judgment Filed by Level Masonry, R.G. Insulation, and Foster Frames**

The Motions filed Level Masonry, R.G. Insulation, and Foster Frames move for summary judgment on the same ground asserted by Specialist Paint:  that those Third-Party Defendants' settlements with DRH in the Construction Defects Litigation bar Travelers' claims against those Third-Party Defendants in this action.  (ECF No. 289, 299, 355.)  For the same reasons stated above in relation to Specialist Paint's Motion for Summary Judgment, the Motions for Summary Judgment filed by Third-Party Defendants Level Masonry (ECF No. 289), R.G. Insulation (ECF No. 299), and Foster Frames (ECF No. 355) are denied.

4.      **J&K Pipeline's Motion for Summary Judgment**

J&K Pipeline moves for summary judgment on two grounds:  (1) that J&K Pipeline's previous settlement with DRH bars Travelers' claims against J&K Pipeline in this action (the same argument advanced by Specialist Paint); and (2) J&K Pipeline was not an "insurer" of DRH and thus cannot be subject to an equitable contribution claim (the same argument advanced by Ark Construction).  (ECF No. 357.)  For the reasons expressed above in denying Specialist Paint's Motion for Summary Judgment and Ark Construction's Motion for Summary Judgment, J&K Pipeline's Motion for Summary Judgment is denied.

5.      **TIG Insurance's Motion for Summary Judgment**

TIG Insurance moves for summary judgment on the ground that it paid DRH over $150,000 in attorneys' fees and costs in defending the Construction Defects Litigation, and that, under any apportionment methodology, it has paid more than its equitable

35

share of DRH's defense fees and costs. (ECF No. 354.) TIG Insurance also points out that DRH is not seeking recovery from Travelers of the portion of the defense fees and costs already paid by TIG Insurance (*i.e.*, DRH is only seeking to recover approximately $900,000 of the approximately $1.2 million in defense fees and costs incurred, because DRH has already collected some amounts from other insurers, including TIG Insurance). The problem with TIG Insurance's argument is that the Court has not yet decided what allocation methodology will be used to determine the various insurers' equitable share of DRH's defense fees and costs. Only when an allocation method is selected will the Court be able to determine whether TIG Insurance has already contributed its equitable share of defense fees and costs.[14]

TIG Insurance makes various other arguments for why Travelers' claims should be dismissed, all of which are rejected. In doing so, the Court must clarify two things. First, Travelers' contribution claim is construed by the Court as an equitable contribution claim (indeed, it is entitled "Equitable Contribution"), despite the claim's citation to Colorado Revised Statute § 13-50.5-102, a statute that the Court has held does not apply in this case (ECF No. 246, at 9 n.4). And second, as the Court has also held, Travelers did not actually have to affirmatively be held liable for DRH's defense fees and costs before bringing its subrogation and contribution claims in this action. (ECF No. 228, at 15.) *See also Patten v. Knutzen*, 646 F. Supp. 427 (D. Colo. 1986)

---

[14] However, the parties should note that, of course, the extent to which a party has already contributed to DRH's defense fees and costs will be factored in to the amount that actually must be paid, if any, as part of the judgment in this case. In TIG Insurance's case, if it is determined that the equitable share is less than what TIG Insurance paid, TIG Insurance will have no obligation to contribute to the judgment.

(allowing contribution claim under Fed. R. Civ. P. 14 even though judgment or settlement – which would cause contribution claim to accrue – had not yet occurred).

TIG Insurance's Motion for Summary Judgment is denied.

## C.   Bifurcation of Trial

On May 8, 2012, Third-Party Defendant Zurich Specialties London, Ltd. ("Zurich") filed a Motion to Bifurcate the Dispositive Motions Deadline and Trial of Travelers's Third-Party Claims.  (ECF No. 264.)  On August 28, 2012, the Court denied the motion in part, and reserved ruling in part.  (ECF No. 336.)  Specifically, the Court held that it would not bifurcate the dispositive motions deadline, and thus required all parties to file their dispositive motions by the September 14, 2012 dispositive motions deadline.  (*Id.*) However, the Court reserved ruling on whether it would bifurcate the trial of this action. (*Id.*)  The Court now proceeds to address that issue.

Federal Rule of Civil Procedure 42 provides, "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  "[A] district court possesses broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused."  *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 957 (10th Cir. 1996).  The Court finds that the nature of the case and the claims asserted herein warrant bifurcation of trial.  There is a clear division in this action between DRH's claim of joint-and-several liability against Travelers, and Travelers' claims against the Third-Party Defendants seeking to recoup some amount of those damages.  Also, holding a single trial on all the claims involved in this action would greatly risk confusing the jury.  Sound justification

37

exists here for bifurcation under Rule 42(b).  Thus, the Court will first hold a trial only on

DRH's claims against Travelers.  Then, if necessary, the Court will hold a separate trial

on Travelers' claims against the Third-Party Defendants.

## IV.  CONCLUSION

The Court's legal rulings in this Order have brought a great number of previously

unresolved issues into clear and sharp focus.  In fact, it appears that the only significant

unresolved issue is how a jury would rule at trial on DRH's bad faith claim against

Travelers (a ruling in DRH's favor would entitle it to double damages, and its reasonable

attorneys' fees and court costs incurred in this action).  *See* Colo. Rev. Stat. § 10-3-

1116(1).  It is time for the parties to devote themselves in earnest and in good faith to

mediating this case and reaching a global settlement of the still-existing claims raised

herein.

In accordance with the foregoing, the Court hereby ORDERS as follows:

(1)     Travelers' Consolidated Motion for Summary Judgment and Motion for

        Determination of Law (ECF No. 358) is GRANTED IN PART and DENIED IN

        PART, as explained in this Order;

(2)     DRH's Omnibus Motion for Summary Judgment (ECF No. 359) is GRANTED IN

        PART and DENIED IN PART, as explained in this Order;

(3)     Travelers' Motion to Strike Portion of Reply in Support of Plaintiffs' Omnibus

        Motion for Summary Judgment or, Alternatively, Motion to Submit Sur-Reply

        (ECF No. 396) is DENIED AS MOOT;

(4)     Jorge Romero d/b/a Specialist Paint's Motion for Summary Judgment (ECF No.

        285) is DENIED;

(5)     Ark Construction Services, Inc.'s Motion for Summary Judgment (ECF No. 287) is DENIED;

(6)     Level Masonry, Inc.'s Motion for Summary Judgment (ECF No. 289) is DENIED;

(7)     R.G. Insulation Co., Inc.'s Motion for Summary Judgment (ECF No. 299) is DENIED;

(8)     TIG Insurance's Motion for Summary Judgment (ECF No. 354) is DENIED;

(9)     Foster Frames, Inc.'s Motion for Summary Judgment (ECF No. 355) is DENIED;

(10)    J&K Pipeline, Inc.'s Motion for Summary Judgment (ECF No. 357) is DENIED; and

(11)    Zurich Specialties London, Ltd's Motion to Bifurcate the Dispositive Motions Deadline and Trial of Travelers's Third-Party Claims (ECF No. 264) is GRANTED IN PART (it was previously denied in part).  The trial of this action will be bifurcated, such that the first trial will involve DRH's claims against Travelers, and the second trial, if necessary, will involve Travelers' claims against the Third-Party Defendants.

Dated this 31st day of October, 2012.

BY THE COURT:

William J. Martinez
United States District Judge