**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02826-WJM-KMT

THE TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut corporation,
TRAVELERS INDEMNITY COMPANY, a Connecticut corporation,
TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut corporation,
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, and
CHARTER OAK FIRE INSURANCE COMPANY, a Connecticut corporation,

    Third-Party Plaintiffs,

v.

AAA WATERPROOFING, INC., a Colorado corporation,
ARK CONSTRUCTION SERVICES, INC., a dissolved Colorado corporation,
CONCRETE MANAGEMENT CORPORATION, a Colorado corporation,
COURMEG LANDSCAPING DESIGN, LLC, a Colorado Limited Liability Company,
D.A.S.H. CONCRETE, INC., a Colorado corporation,
DOVE CREEK ENTERPRISES, INC., a Colorado corporation,
FOSTER FRAMES, INC., a Colorado corporation,
J & K PIPELINE, INC., a Colorado corporation,
JORGE ROMERO, d/b/a SPECIALIST PAINT,
LEVEL MASONRY, INC., a dissolved Colorado corporation,
MID-CENTURY INSURANCE, a California corporation,
PROTO CONSTRUCTION AND PAVING, INC., a Colorado corporation,
R.G. INSULATION CO., INC., a trade name of G.H. & W, Incorporated, a Missouri corporation,
TIG INSURANCE, a California corporation, and
ZURICH SPECIALTIES LONDON, LTD., a non-incorporated re-insurer,

    Third-Party Defendants.

---

**ORDER ON MOTIONS FOR A DETERMINATION OF LAW
WITH RESPECT TO ALLOCATION**

---

    This matter is before the Court on the Motion for a Determination of Law Re:

Allocation filed by Third-Party Defendant Jorge Romero, d/b/a Specialist Paint

("Specialist") (ECF No. 456), the Joinder in Specialist's Motion filed by Third-Party

Defendant Mid-Century Insurance ("Mid-Century") (ECF No. 457), and the related Brief on Allocation filed by Third-Party Defendant Ark Construction Services, Inc. ("Ark") (ECF No. 455) (collectively the "Motions"). The Court hereby grants the Motions and sets forth its ruling with respect to allocation below.

## I.  BACKGROUND

This case arises out of a 2003 state court action alleging construction defects filed by the homeowners association for the Summit at Rock Creek, a residential community for which Plaintiff D.R. Horton ("DRH") was engaged as general contractor ("Construction Defects Litigation"). Third-Party Defendants AAA Waterproofing, Ark, Concrete Management Corp., Courmeg Landscaping Design, LLC, D.A.S.H. Concrete, Dove Creek Enterprises, Foster Frames, J & K Pipeline, Specialist, Level Masonry, Mid-Century, Proto Construction and Paving, R.G. Insulation, TIG Insurance, and Zurich Specialties London, Ltd. (collectively the "Third-Party Defendants") are either subcontractors that performed work on the property at the Summit at Rock Creek, or insurers of those subcontractors. DRH's contracts with the various subcontractors required each of them to carry a commercial general liability insurance policy naming DRH as an additional insured party. Third-Party Plaintiffs The Travelers Indemnity Company of America, Travelers Indemnity Company, Travelers Indemnity Company of Connecticut, St. Paul Fire and Marine Insurance Company, and Charter Oak Fire Insurance Company (collectively "Travelers") are insurance companies that insured other subcontractors, who are not parties to this action.

The Construction Defects Litigation was ultimately settled in March 2005 for $39.5 million. In the course of litigation, DRH incurred approximately $1.2 million in

fees and costs.  During and after the conclusion of the Construction Defects Litigation, DRH attempted to negotiate with Travelers and other subcontractors' insurers regarding the extent of their obligations for payment of DRH's defense fees and costs.  DRH sought to recover the $200,000 deductible DRH paid, and the amount that DRH's insurer paid in defense fees and costs.[1]  In the Construction Defects Litigation, DRH filed third-party claims and cross-claims against these subcontractors, some of which resulted in settlement negotiations and agreements.  In the course of its negotiations, DRH collected payments from several parties to the case here, including Travelers, TIG Insurance, and Mid-Century.[2]

On October 20, 2010, DRH filed this action against Travelers in state court. (ECF No. 1-1.)  Travelers removed the action to this Court on the basis of diversity jurisdiction (28 U.S.C. § 1332), and subsequently filed counterclaims against DRH, as well as third-party claims against the Third-Party Defendants.  (ECF Nos. 1, 30, 37.)  In March 2013, DRH and Travelers settled their claims against each other.  (ECF No. 412.)  Thus, the only remaining claims are Travelers' claims against the Third-Party Defendants, in which Travelers seeks contribution from the Third-Party Defendants for having paid more than its equitable share of DRH's defense fees and costs in the Construction Defects Litigation.  (ECF No. 30 ¶¶ 71-89.)

---

[1] DRH's insurer assigned this claim for recovery to DRH.

[2] DRH collected additional amounts from other parties.  Mid-Century's payments were made as consideration for settlement agreements between DRH and Farmers Insurance Exchange, of which Mid-Century is a subsidiary, on behalf of two subcontractors insured by Mid-Century.  (*See* ECF Nos. 457-1 & 457-2.)

On October 31, 2012, the Court entered an Order which held that Travelers' obligation to defend DRH was a joint and several duty. (ECF No. 397 at 16, 20.) The Court's Order also rejected Travelers' proposal to allocate each subcontractor's obligation to contribute to DRH's defense fees and costs based upon the subcontractor's relative underlying liability for the construction defects. (*Id.*) However, the Order did not make a determination as to the proper allocation method.

Consequently, the instant Motions were filed on December 16, 2013, seeking a determination of law as to the proper allocation of the subcontractors' respective obligations to contribute to DRH's defense fees and costs. (ECF Nos. 455, 456, & 457.) Travelers filed a Response. (ECF No. 461.) No replies were permitted.

## II.  DISCUSSION

As the Court previously ruled, a liability insurer's duty to defend is a joint and several duty, such that an insurer who breaches this duty can be found liable for the entire amount of defense fees and costs, and that insurer can then seek equitable contribution from any co-insurers owing the same duty to defend. (ECF No. 397 at 16 (citing authority from California, Montana, New York, Texas, and Washington).) Colorado law permits such *pro rata* equitable contribution from co-insurers of the same loss. *See Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.*, 833 P.2d 741, 747-48 (Colo. 1992). The parties here agree that no controlling precedent mandates a particular allocation method under Colorado law, and that equitable principles govern the determination of allocation. (*See* ECF Nos. 455 at 5-6; 456 at 5; 461 at 4.)

The Motions before the Court seek a ruling on the method of allocating the defense costs and fees incurred by DRH in the Construction Defects Litigation. The parties raise two primary issues with respect to allocation, requesting that the Court rule on: (1) whether allocation should be based on policy limits or equal shares, and (2) whether such allocation applies to all 54 subcontractors that DRH implicated in the underlying state case (or their respective insurers), or only the 23 subcontractors that are represented as parties or by their insurers in this case. (ECF Nos. 455, 456, 457, 461.) Mid-Century seeks an additional determination of its obligations given its prior settlements with DRH. (ECF No. 457 at 3-5.) The Court will discuss each issue in turn.

**A.    Allocation**

The parties have presented the Court with various methods of allocation from which to select, focusing on the "equal shares" method and the "policy limits" method. (*See, e.g.*, ECF No. 455 at 6-11.) Travelers and the Third-Party Defendants all support some variation of an equal shares allocation method. (*Id.*; ECF Nos. 456 at 5; 457 at 2; 461 at 13.)

The Court has little difficulty rejecting the policy limits-based allocation method in this case. As Ark points out in its brief, such a system is not workable in this case, because numerous parties failed to obtain the requisite insurance policies, making them *de facto* self-insurers without policy limits upon which to base their allocation. (ECF No. 455 at 6-7.) The process of determining the allocation for such *de facto* insurers would require the Court either to adopt an arbitrary policy limit for them, or to hybridize its approach and assign a policy limit based on a time-on-the-risk determination of the

scope of its *de facto* policy. This process would be just as time-consuming and unreliable as Travelers' previously proposed method of allocating by respective liability for the underlying construction defects, which the Court rejected for lack of a workable and reliable way to determine each subcontractor's respective liability given the settlement in the underlying case. (ECF No. 397 at 20.) As the policy limits-based allocation method would be similarly unworkable here, the Court will not adopt such a method.

Instead, the Court finds that an equal shares method will result in the most equitable allocation in this case. While equal shares allocation has been applied in a minority of jurisdictions, the circumstances of this case—in which each subcontractor/insurer had a joint and several duty to provide a complete defense to DRH, and no reliable method exists to tie allocation to liability or policy limits—militates in favor of a holding that those subcontractors/insurers' responsibility for equitable contribution to DRH's defense costs should be apportioned evenly.[3] *See Reliance Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 753 F.2d 1288, 1291 (4th Cir. 1985); *see also Cont'l Cas. Co. v. Aetna Cas. & Sur. Co.*, 823 F.2d 708, 712 (2d Cir. 1987); *Century Indem. Co. v. Liberty Mut. Ins. Co.*, 815 F. Supp. 2d 508, 514 (D.R.I. 2011).

---

[3] The parties appear to disagree on the correct interpretation of the Court's Order holding that the liability insurers' duty to defend is a joint and several obligation. (*See, e.g.*, ECF No. 456 at 8-10.) The Court's Order referred to each insurer's joint and several duty to provide a complete defense to DRH, and concluded that any one insurer who breached that duty could be found liable for the entire amount of DRH's defense costs, which insurer could then seek equitable contribution from other co-insurers. (ECF No. 397 at 16.) The Court did *not* hold that each co-insurer owed a joint and several duty of contribution, such that the monetary obligation could be shifted completely from the insurer seeking contribution onto any other co-insurer, as that would inevitably result in a nearly interminable string of actions for equitable contribution. This matter has endured long enough without such an invitation to future litigation.

However, though the parties agree on equal shares allocation, they disagree upon how to allocate the shares, with Ark contending that the Court should assign one share to each policy (or *de facto* policy), and the rest of the parties arguing for one share per subcontractor. (*See* ECF Nos. 455 at 10-11; 456 at 7-8; 461 at 10-13.) Because some subcontractors held multiple policies, a per-policy allocation would increase the number of shares based on each insurer's separate joint and several duty to defend, but would arbitrarily assign subcontractors with *de facto* policies only one share by default. In contrast, a per-party allocation would effectively assign fractional shares to insurers of subcontractors that held multiple policies. Neither method completely avoids arbitrary determinations. However, the Court finds persuasive Travelers' argument that, because each subcontractor (or its respective insurer) owed DRH a complete duty to defend only once, a subcontractor that held multiple policies should not be allocated multiple shares. (*See* ECF No. 461 at 11.) Therefore, the Court concludes that the most equitable allocation method here is to divide the contribution amounts into equal shares per subcontractor.

**B.    Scope of Application**

The parties also disagree about which subcontractors should be included in the allocation. The Third-Party Defendants argue that allocation should be applied to all 54 subcontractors implicated by DRH in the Construction Defects Litigation. (ECF Nos. 455 at 5; 456 at 7-8.) In contrast, Travelers contends that allocation should apply only to the subcontractors who are represented in the instant case, either directly or through their insurers. (ECF No. 461 at 6-11.) Both sides of this dispute make overtures to the

Court's determination that each liability insurer—including subcontractors serving as *de facto* self-insurers—has a joint and several duty to provide a complete defense. (*See* ECF No. 397 at 16.)

The Third-Party Defendants argue that the joint and several duty to defend means that every subcontractor should be allocated a share of the cost of defense, regardless of whether Travelers chose to seek contribution from it in this action. (ECF Nos. 455 at 5; 456 at 7-8.) This would effectively require Travelers to bear the shares for all parties from whom it did not seek contribution. Travelers, unsurprisingly, objects to this method, and further suggests that allocation to all subcontractors owing a duty to defend would require the jury in this case to make a separate, time-consuming determination of whether each non-party subcontractor had a duty to defend. (*Id.* at 8-9.) Travelers contends that the witnesses and exhibits currently proposed for trial by the Third-Party Defendants will not establish the evidentiary bases needed for such determinations. (*Id.*)

Travelers argues that its proposal, more than the Third-Party Defendants', follows from the Court's Order holding jointly and severally liable all insurers owing a duty to defend. Travelers points out that many non-party subcontractors did not owe DRH a duty to defend, and that it dismissed some such parties from this case after determining they did not owe such a duty. (ECF No. 461 at 6-11.) Necessarily, then, Travelers' proposal arbitrarily depends on Travelers' decisions as to which parties owed a duty to defend. However, the Third-Party Defendants' method itself depends on DRH's prior litigation decisions in the underlying case, as DRH made a similar determination in choosing to sue the subcontractors it believed owed it a duty to

8

Case 1:10-cv-02826-WJM-KMT   Document 462   Filed 01/17/14   USDC Colorado   Page 9 of 11

defend.  (*See* ECF No. 455 at 3-4.)  Thus, neither method completely eliminates such potentially arbitrary determinations.

The Court declines to select an unworkable scope of allocation that would potentially result in protracted argument and distraction from the remaining issues in this case.  As such, the Court finds that Travelers' proposal of allocating only to subcontractors represented in this case is the proper method here, as it most closely adheres to the Court's understanding of the parties' obligations while remaining workable and reliable.

This decision by no means represents a holding that all subcontractors not named in this case necessarily owed no duty to defend or to contribute, but rather only that, in applying its equitable powers in this matter, the Court will not consider allocation to non-parties.

**C.     Effect of Settlement**

Finally, Mid-Century argues that it should not be deemed jointly and severally liable for the entire cost of DRH's defense, because it already contributed to such fees and costs when it settled with DRH in 2009 on behalf of the two subcontractors it insured.  (ECF No. 457 at 3-5.)  Mid-Century contends that, at most, it should be liable only for equitable contribution in the amount of its equal share of those costs that exceeds the amount Mid-Century already paid to DRH.  (*Id.* at 5.)

Mid-Century's arguments recollect those made by TIG Insurance in its motion for summary judgment, in which TIG Insurance contended that its payment to DRH of over $150,000 in defense fees and costs constituted more than its equitable share.  (*See*

ECF No. 354.)  In denying summary judgment to TIG Insurance, the Court held that it could not determine whether TIG Insurance has already contributed its equitable share of defense fees and costs because an allocation method had not yet been selected. (ECF No. 397 at 36.)  However, the Court noted that the extent to which a party has already contributed to DRH's defense fees and costs would be considered when calculating that party's equitable share of the judgment.  (*Id.* at 36 n.14.)

As the Court has now determined that an equal shares allocation is appropriate in this case, a party that can demonstrate that it has already paid some amount to DRH for its defense fees and costs will have its equitable share offset by the amount of such payment.  Thus, to the extent that Mid-Century can demonstrate that its settlement payments to DRH constituted a contribution to DRH's defense fees and costs, Mid-Century's equitable shares for those subcontractors will be offset by the amount of those payments.

### III.  CONCLUSION

In accordance with the foregoing, the Court hereby ORDERS as follows:

(1)  Ark Construction Services' Brief on Allocation (ECF No. 455) and Jorge Romero d/b/a Specialist Paint's Motion for a Determination of Law Re: Allocation (ECF No. 456), joined by Mid-Century Insurance (ECF No. 457), are hereby GRANTED insofar as they request a determination of law as to allocation;

(2)  The allocation method shall be by equal shares among the subcontractors that have appeared in this case, either directly or through their insurers, with offsets for any prior contributions to DRH's defense fees and costs, as explained in this Order; and

(3)     This case remains set for an eight-day jury trial to commence on March 10, 2014.

Dated this 17th day of January, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge